2013-1466

In The

# United States Court Of Appeals
## For The Federal Circuit

## SOFPOOL LLC,

*Plaintiff-Appellant,*

v.

## KMART CORPORATION and
## BIG LOTS STORES, INC.,

*Defendants-Appellees.*

Appeal from the United States District Court for the Eastern District of
California in No. 10-CV-3333, Senior Judge Lawrence K. Karlton.

––––––––––––––

## BRIEF OF APPELLANT

––––––––––––––

John P. Costello
COSTELLO LAW
CORPORATION
331 J Street, Suite 200
Sacramento, CA 95814
(916) 441-2234

Jack L. Slobodin
LAW OFFICE OF
 JACK L. SLOBODIN
756 Augusta Drive
Moraga, CA 94556
(510) 847-9986

*Counsel for Appellant*

*Counsel for Appellant*

# CERTIFICATE OF INTEREST

Counsel for Plaintiff-Appellant Sofpool, LLC ("Sofpool")  hereby certifies

the following:

1.      The full name of every party represented by me is:

**Sofpool, LLC, a California Limited Liability Company.**

2.      The name of the real party in interest (if the party named in the
caption is not the real party in interest) represented by me is:

**The real parties in interest are named in the caption.**

3.      All parent corporations and any publicly held companies that own 10
percent or more of the stock of the party or amicus curiae represented
by me are:

**None**

4.      The name of all law firms and the partners or associates that appeared
for the party or amicus now represented by me in the trial court or
agency or are appearing in this Court are:

**For  Plaintiff-Appellant Sofpool: Costello Law Corporation; John P. Costello
For Plaintiff-Appellant Sofpool: Law Office of Jack Slobodin; Jack Slobodin
ForDefendants-Appellees Kmart Corporation and Big Lots Stores, Inc.
(Collectively "KMBL"): Troutman Sanders LLP: Paul L. Gale,  Siavish
Daniel Rashtian**

# TABLE OF CONTENTS

**PAGE:**

CERTIFICATE OF INTEREST ...............................................................i

TABLE OF CONTENTS....................................................... ii

TABLE OF AUTHORITIES ......................................... vii

STATEMENT OF RELATED CASES ...................................x

JURISDICTIONAL STATEMENT ........................................1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ............................1

STATEMENT OF THE CASE...................................................4

    A.    Preliminary Statement ...........................................4

    B.    Relevant Procedural History .................................6

STATEMENT OF THE FACTS ..............................................7

    A.    Final Judgment That This Appeal Applies To .....................7

        1)    The Genesis of the '817 Patent Oval Above-Ground Swimming Pool Design .............................7

        2)    Defendants' Acts of Infringement ............................10

        3)    The Prior Art Presented in this Case........................10

        4)    Construction of the '817 Patent Claim ....................11

        5)    Evidence of Similarity From the Prior Case of *Sofpool LLC v. Intex Recreation Corp* .................................... 12

            a)    Defendant's Expert Stephen C. Visser Testified That an Ordinary Observer Would be Confused by the Nearly Identical Intex Pool......................................13

ii

b)     In Closing Arguments During the Intex Case, Intex's Counsel Conceded the Similarity Between the Intex Pool and the '817 Design .................................15

c)     The District Court Noted Multiple Undisputed Similarities Between the '817 Design and Accused Product .............................................................................15

d)     Further Undisputed Similarities in Overall Effects Between the '817 Design and the Accused Product Not Mentioned by the District Court in its Decision ........................................................................16

6)     Sofpool Patent-Marked Commercial Embodiments .................17

7)     The District Court's Confusion....................................................21

SUMMARY OF ARGUMENT ...............................................................................23

A.     The District Court Erred by Failing to Properly Apply the Two-Pronged Ordinary Observer Infringement Test as Applied in *Egyptian Goddess* and its Progeny.....................................................23

ARGUMENT ..........................................................................................................25

STANDARDS OF REVIEW..........................................................................25

A.     At the District Court Level, this was a Case Punctuated By Confusion ............................................................................................26

B.     Apart From the Fact that Sofpool's Above-Ground Swimming Pool Design Functions as a Vessel to Hold Water, the Remainder of Its Design is Ornamental .............................................28

C.     The Ornamental Elements of the '817 Design Must Be Considered In The Context of the "Overall Design" .........................30

D.     A Comparison of the Patented Design Side-By-Side with the Accused Product in Terms of the Overall Designs is Proper.............33

1)   An overall ornamental effect of an above-ground swimming pool with smooth sides having gentle angles and bulges ...............................................................................34

2)   Another overall ornamental effect of the prominent oval-shaped top tube having a round cross section wherein the oval top tube follows the oval pool shape along the top of the pool, while overlapping the sides and joining with the top of the sides .........................................................................35

3)   The overall effect of the top tube overlapping the sides creates an ornamental shadow ...................................................35

4)   A further overall effect of generally U-shaped side struts joining beneath the top tube and being cast at an angle and retained at their bottoms by straps which extend horizontally a distance from the bottom of the pool sidewall ...................................................................................36

5)   The overall effects considered in perspective view. Consider again the "roundness", "ovalness" and visually-overlapping quality of the top tube; the generally U-shaped struts, their attachment position to the pool and their angled/offset appearance; the smoothness of the sides; the contours followed by the seams; the ornamental appearance of the gentle angles and bulges; the "ornamentalness" of the shadow effect caused by the top-tube overlap and the sizing of the panels ..........................37

6)   Bottom view of the Accused Product Shown in a Filled Condition, Not Accessible, and Therefore Should be Ignored ...................................................................................37

E.   Sofpool Has Proven By a Preponderance of the Evidence that the '817 Patent is Infringed by KMBL's Accused Product ...............38

1)   The Threshold Requirement of Substantial Similarity Between the Accused Product and Patented Design has, According to the District Court's Own Words, Been Met .......38

iv

2)    Once Similarity Between an Accused Product and
      Patented Design is Established, the Second Prong of the
      Ordinary Observer Test Requires Engaging in a Three-
      Way Comparison With Prior Art ................................................ 40

3)    Egyptian Goddess Noted Different Categories of Cases
      for Comparison with Prior Art; Those Where the
      Patented Design is Close to the Prior Art and those
      Where the Patented Design Conspicuously Departs from
      the Prior Art ............................................................................. 42

      a)    Cases Where the Patented Design is Close to the
            Prior Art ......................................................................... 43

      b)    Cases Where the Patented Design Departs
            Conspicuously From the Prior Art ................................. 46

4)    Sofpool's Case is one which Departs Conspicuously
      From the Prior Art; The Three-Way Prior Art
      Comparison as Applied to this Case ......................................... 48

      a.    '817 vs. United States Design Patent No.
            D453,839 (RHO) AND Accused Product ...................... 49

      b.    '817 vs. United States Design Patent No.
            D408,546 (CARREAU) AND Accused Product ........... 53

      c.    '817 vs. Intex Round Pool AND Accused Product ........ 56

      d.    '817 vs.  Tempo Round Pool  AND Accused
            Product ........................................................................... 57

      e.    '817 vs. FIG. 6 of U.S. Patent No. 1,961,061
            (McCulloch) AND Accused Product .............................. 57

      f.    '817 vs. U.S. Patent No. 6,571,405 (Saputo et. al)
            AND Accused Product .................................................... 59

      g.    '817 vs. U.S. Patent No. 5,884,347 (Yurchison et
            al.) Figs. 1 and 2 AND Accused Product ....................... 59

h.  '817 vs. U.S. Patent No. 6,389,616 (Mussa) AND Accused Product ............................................................ 60

i.  '817 vs. U.S. Patent No. 3,793,651 (Pitti) AND Accused Product ............................................................ 61

j.  '817 vs. U.S. Patent No. 3,409,916 (Billig et al) AND Accused Product .................................................... 62

k.  Accused Product vs. U.S. Patent No. 3,466,676 (Barrera et al.) AND Accused Product ........................... 63

l.  Accused Product vs. U.S. Patent No. 3,530,512 (McBride et al.) AND Accused Product ........................ 64

m.  Accused Product vs. U.S. Patent No. 4,413,361 (Wolf et al.) AND Accused Product ............................... 65

n.  Accused Product vs. U.S. Design Patent No. D427,693 (Mussa) AND Accused Product ................... 66

o.  Accused Product vs. U.S. Design Patent No. D420,145 (Mussa) AND Accused Product ................... 67

5)  The 3- Way Comparison Demonstrates Infringement by a Preponderance ......................................................... 68

CONCLUSION ...................................................................... 69

ADDENDUM

CERTIFICATE OF FILING AND SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**PAGE(S):**

## CASES:

*Apple Inc. v. Samsung Electronics Co., Ltd.*,
    2013 U.S. Dist. LEXIS 13240 (N.D.Cal.) .............................................*passim*

*Avia Group Int'l Inc. v. L.A. Gear California, Inc.*,
    853 F.2d 1557 (Fed. Cir. 1988) ...................................................................29

*Cobra Fixations Co. Ltd. v. Newell Operating Company*,
    2011 U.S. Dist. LEXIS 40239 (D. NC 2011)................................................47

*Competitive Edge, Inc. v. Staples, Inc.*,
    763 F. Supp. 2d 997 (N.D. Il), *aff'd without opinion*,
    *Competitive Edge, Inc. v. Staples, Inc.,*
    2011 U.S. App. Lexis 4114 (Fed. Cir. 2011)............................................*passim*

*Crocs Inv. v. International Trade Commission*,
    598 F.3d 1294 (Fed. Cir 2010) ........................................................2, 3, 32, 33

*David A. Richardson v. Stanley Works, Inc.*,
    597 F.3d 1288 (Fed. Cir. 2010) ...................................................28, 29, 41, 42

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
    543 F.3d 665 (Fed. Cir. 2008) ............................................................ *passim*

*Elekta Instrument Int'l, Inc. v. O.U.R. Scientific Int'l, Inc.*,
    214 F.3d 1302, 54 U.S.P.Q.2d 1910 (Fed. Cir. 2000)..................................25

*Gorham Co. v. White*,
    81 U.S. 511 (1871)....................................................................26, 38, 40, 46

*Int'l Seaway Trading Corp. v. Walgreens Corp.*,
    589 F.3d 1233 (Fed. Cir. 2009) ............................................................37, 38

*L.A. Gear, Inc. v. Tom McAn Shoe Co.*,
    988 F.2d 1117, 25 U.S.P.Q.2d 1913 (Fed. Cir. 1993)..................................25

*Lee v. Dayton-Hudson Corp.*,
838 F.2d 1186 (Fed. Cir. 1988) ......................................................32

*Luv 'N Care Ltd v. Mayborn USA, Inc.*,
898 F. Supp. 2d 634 (SDNY 2012) ..........................................46, 47

*Mannesmann Demag Corp. v. Engineered Metal Products Co.*,
793 F.2d 1279, 230 USPQ 45 (Fed. Cir. 1986)............................25

*Oddzon Prods., Inc. v. Just Toys, Inc.*,
122 F.3d 1396, 43 U.S.P.Q.2d 1641 (Fed. Cir. 1997)..................25

*Parker v. Kimberly Clark*,
2012 U.S. Dist. Lexis 2565 (N.D. Il. 2012)............................49, 56

*Petrolite Corp. v. Baker Hughes Inc.*,
96 F.3d 1423, 40 U.S.P.Q.2d 1201 (Fed. Cir. 1996)....................25

*United States v. Kayser-Roth Corp.*,
272 F.3d 89 (1st Cir. 2001)............................................................25

*Wing Shing Products Co. Ltd v. Sunbeam Products, Inc. et al.*,
665 F. Supp. 2d 357, (SDNY 2009); *Affirmed without opinion by
Wing Shing Prods. (BVI) Co. v. Sunbeam Prods.*,
2010 U.S. App. LEXIS 9189 (Fed. Cir. 2010))............................45

## STATUTES:

28 U.S.C. § 1295(a)(1)................................................................1

28 U.S.C. § 1331............................................................................1

28 U.S.C. § 1338(a) ......................................................................1

28 U.S.C. § 2107(a) ......................................................................1

35 U.S.C. § 271 *et. seq.*...............................................................1

**<u>RULES</u>:**

Fed. R. App. P. 4 ........................................................................................................... 1

## <u>STATEMENT OF RELATED CASES</u>

(a)  whether any other appeal in or from the same civil action or proceeding in the lower court or body was previously before this or any other appellate court:

None.

(b)  the title and number of any case known to counsel to be pending in this or any other court that will directly affect or be directly affected by this court's decision in the pending appeal:

None.

x

## JURISDICTIONAL STATEMENT

The District Court had jurisdiction under 28 U.S.C. §§ 1331 & 1338(a) and 35 U.S.C. § 271 *et. seq.* The district court entered a final judgment on June 12, 2013. This appeal, noticed on June 21, 2013, is timely. 28 U.S.C. § 2107(a); Fed. R. App. P. 4. This Court has jurisdiction under 28 U.S.C. § 1295(a)(1).

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

**A.** **Infringement**:

    **1)** **Whether the District Court's Determination of the Substantial Similarity Between the Accused Product and Patented Design Should Have Been Followed Up With a Three-Way Comparison Between the Patented Design, the Accused Product and the Prior Art to Determine Infringement; and Whether Such Failure to Do So Was Error as a Matter of Law.**

Sofpool demonstrated by a preponderance of the evidence that the Accused Product was substantially similar in appearance to the Patented Design. The Court stated that the Accused Product appeared to be within the scope of U.S. Des. Pat. No. 480,817, (the "817 Patent"). The Court also made reference several times during the summary judgment hearing to the similarity between the Patented Design and Accused Product. The Court noted that Sofpool's case was different from the *Competitive Edge* case, (affirmed by the Federal Circuit), which found a lack of substantial similarity between an accused product and a patented design.

1

Despite citing the high level of similarity between the Patented Design and Accused Product during the summary judgment hearing, and in its written decision, the District Court erred as a matter of law by not taking the next step as required under the ordinary observer test. That step was to engage in a three-way comparison between the Patented Design, Accused Product and the prior art once evidence of similarity was proven. The Appellant will show that such a prior art analysis, had it been done, would have revealed that the Patented Design departed conspicuously from the prior art presented in this case, on several novel overall features, and that the Accused Product incorporated these novel departing features. In such a case infringement is likely as a matter of law.

     a)    <u>By Neglecting to Engage in a Three-Way Comparison with Prior Art, the District Court Denied Itself a Helpful Frame of Reference; Without Such a Prior Art Reference, the District Court Exposed Sofpool's Case to the Danger of Focusing on the Element of Proportion in Isolation.</u>

When free from the binds of design patent rules, it is typical human nature to compare designs by pointing out differences in isolation. Under *Egyptian Goddess* the danger of such comparisons was the impetus for rejecting the old point of novelty test, as this test allowed differences in isolation to be a basis for non-infringement between otherwise overall similar designs. See *Crocs Inv. v. International Trade Commission*, 598 F.3d 1294, 1303 (Fed. Cir 2010). Here, the District Court, without any reference to prior art, decided that the Patented Design

looked like a "wading pool" and the Accused Product was "tall and elegant".  This

focus on proportion in isolation was after the District Court had previously touted

the similarity of the two designs.

*Egyptian Goddess* noted the danger of this very situation before us and

crafted a new rule where the ordinary observer must engage in the three-way

analysis to provide a frame of reference so that arbitrary differences in isolation

could not be used to decide design patent cases.  See *Crocs*, at 1303.  This rule was

not applied by the District Court here.  This appeal intends to reconstruct the frame

of reference that should have been applied, so that this Court may find that KMBL

infringes Sofpool's '817 Patent.

      **2)**      **Whether The District Court Erred by Going Too Far in Limiting the Scope of the '817 Patent Regarding Proportions in Light of Sofpool's Commercial Embodiments and File History Which Clearly Contemplate Varying Proportions.**

It also seems that a side issue that wasn't given proper treatment is the issue

of the scope of the '817 Patent and whether the '817 Patent can claim a certain

range of proportions.  The '817 Patent clearly does not limit its application of

design to a certain length, as noted in FIG. 11 of the '817 Patent which adds

infinite panels and struts to the '817 Patent.  (A135.)  Also, the commercial

embodiments manufactured by Sofpool evince differing proportions, and can aid in

determining infringement in a design patent case.  See e.g. Jury Instruction No. 47

from *Apple v. Samsung* Case.  (A1621.)

# STATEMENT OF THE CASE

## A.     Preliminary Statement

This matter appeals the summary judgment decision of the District Court's finding of non-infringement of Sofpool's **'**817 Patent, for an above-ground swimming pool design.  Defendants Kmart Corporation and Big Lots Stores, Inc. (collectively "KMBL")  sold the Accused Product, its "Summer Escapes™"  9' x 15' x 42" above-ground swimming pool.  The District Court acknowledged the similarity between the Accused Product and the Patented Design at the outset of its summary judgment decision.  The Court even went so far as to support its initial determination by citing at least four similarities between the two designs.  Also the District Court referenced how Sofpool's case was different from the *Competitive Edge* case, where the competing designs were determined not to be substantially similar upon doing a side-by-side analysis of the accused product versus the patented design.

Despite first acknowledging the similarities between the Accused Product and Patented Design in its decision, the District Court skipped the step of a three-way prior art analysis, which was required as a matter of law under the current ordinary observer test.  At one point in its decision the Court did acknowledge the importance of applying the prior art as a background reference.  In practice however, the Court failed to apply the prior art to this case.  Instead, the District

4

Court unexplainably, and in contravention of the law, concluded that the Patented Design was more like a "wading pool" and the Accused Product was "taller and more elegant." Upon infusing this proportional basis into its reasoning, with no reference to prior art, the Court decided against Sofpool.

This case does not seem to be one where Sofpool failed to meet its burden to show substantial similarity between the Accused Product and Patented Design. For one, the District Court's own clear statements on the similarity of the designs are an acknowledgement that Sofpool has met its preponderance burden. Additionally, KMBLs' own expert opined that a nearly identical pool product (when compared to the Accused Product) from a prior case, was so similar to the Patented Design that an ordinary observer could "confuse" them. In fact, in the original case, proportion was not even raised as an important factor.

Finally, the District Court seemed to be confused on issues of design patent law to an unusually heavy and concerning degree. Certainly, a Court is entitled to explore concepts of design patent law with counsel, during a hearing in coming to a decision. However, here, the District Court seemed to waver to a high degree and repeatedly admitted its confusion. At one point, the Court tried to explore whether the functionality of a wading pool versus a swimming pool would have an effect on the mind of the ordinary observer. Infusing such a functional analysis, was clear error, and this caused great concern for Sofpool.

It is possible that the District Court here just got it wrong.  However, the District Court got it right in so far as determining that the Accused Product was similar to the Patented Design.  The Court just needed to take the next step and engage in a prior art analysis.  Had it taken the step of engaging in a prior art analysis, Sofpool believes that a decision of infringement in favor of Sofpool would have been easy to conclude.

**B.    <u>Relevant Procedural History</u>**

On December 14, 2010, Sofpool filed its complaint for the infringement of the '817 Patent in this case in the United States District Court for the Eastern District of California  (the "District Court" ).  (A24.) On March 31, 2011, Sofpool filed its first amended complaint for infringement of the '817 Patent in District Court. (A33-42.) The first amended complaint is the operative complaint in this case.  On August 8, 2012 the District Court conducted a Markman hearing to determine the proper meaning of the '817 Patent and the Markman Order was issued on August 29, 2012. (A401-411.)  On January 10, 2013 the Court heard both Sofpool's and KMBL's cross-motions for the summary judgment at issue here.  (A1653-1704.) Six months later, on June 30, 2013, the District Court granted KMBL's summary judgment for non-infringement and denied Sofpool's summary judgment for infringement.  (A2-14.)  The final judgment was issued by the District Court on June 12, 2013. (A1.)

## STATEMENT OF THE FACTS

**A.    Final Judgment That This Appeal Applies To**

This is an appeal relating to the District Court's summary judgment finding of non-infringement of the '817 Patent. (A14.)  The Appellant, Sofpool, LLC seeks relief from the District Court's summary judgment order signed by Judge Lawrence K. Karlton on May 29, 2013 (A14.); and from the subsequent final judgment entered on June 12, 2013. (A1.)

### 1)    The Genesis of the '817 Patent Oval Above-Ground Swimming Pool Design

In 1993, Pierre Carreau, the inventor of the Patented Design entered the above-ground pool business by becoming a U.S. distributor of Tempo™ brand pools of Canada.  (A563.)  The Tempo™ was a round-shaped above-ground pool. (A354, A563) The Tempo had a round, square-shaped foam top ring to help the round vinyl sidewalls rise, as the pool was being filled with water, without the use of any framework. (A67.)  Hence, the Tempo was a "self-rising" above-ground pool (A109.)

The Tempo proved to be a poor seller due to its appearance being less than aesthetic.  In an attempt to provide the world with a better looking round pool, Pierre Carreau designed a round pool that became the subject of his patent, U.S. Design Pat. No. D408, 546 ("'546 Patent"). (A144-152.)  Later, Pierre Carreau set to work on building an oval above-ground swimming pool having a pleasing

aesthetic appearance. In making his first oval prototype, Carreau started with a commercial embodiment of a round pool having a design in accordance with the '546 Patent which he was already selling. (A808.) :



The round pool was cut in half and a significant amount of cutting, shaping and forming of vinyl pool panels had to be done to revise the shape to render the final oval '817 Patent swimming pool design. (A774.) When the oval above-ground pool prototype was completed in 2003, it formed the basis for the oval above-ground pool design of the '817 Patent. (A131-135.) Some views from the '817 Patent are shown as follows:





Fig. 4



Fig. 6



*Fig. 7*

*Fig. 8*

The '817 Patent was issued on October 14, 2003, to Pierre Carreau. (A131.)

Mr. Carreau assigned the '817 Patent to Sofpool. (A401.) A copy of the '817

Patent prosecution file history is included in the appendix. (A200-252.) The '817

Patent and its file history clearly show that the '817 Patent was intended to cover a

range of lengths of above-ground swimming pools incorporating the '817 Design

(A131-135.) Drawing Figures 1-5 show a short version. (A131-133.) Drawing

Figures 6-10 relate to the embodiment asserted against KMBL, and is a longer

version than that shown in Figures 1-5. (A133-134.) Figure 11 shows that the '817

pool may be any variety of lengths depending on the number of panels and side

sruts included in the design. (A135.)



*Fig. 11*

The '817 Patent contains a single design patent claim, namely: "The design for an above-ground swimming pool, as shown and described." (A131.)

**2)    Defendants' Acts of Infringement**

KMBL has sold oval above-ground swimming pools under the "Summer Escapes™" brand name and has sold them in sizes of 15' x 9' x 42" and 12' x 20' x 42" (collectively hereafter the "Accused Products" or "Summer Escapes™" pool). (A1365, A1377.)  Sofpool has obtained access to a representative sample of KMBL's 15' x 9' x 42" pool which is the subject of comparison photographs presented in this appeal. (A531-538; A1346-1347.)

**3)    The Prior Art Presented in this Case**

The following prior art has been deemed to be the relevant in this case. :

1.   U.S. Design Pat. No. D453,839 (Rho)  (A543-549.)

2.   U.S. Design Pat. No. D408,546 (Carreau) (A551-559.)

3.  The Intex Round Pool (A561.)

4.  The Tempo Round Pool (A563.)

5.  FIG. 6 of U.S. Patent No. 1,961,061 (McCulloch) (A566.)

6.  U.S. Patent No. 6,571,405 (Saputo et. al) (A571-572.)

7.  U.S. Patent No. 6,389,616 (Mussa) (A582.)

8.  U.S. Patent No. 3,793,651 (Pitti) (A588, A595.)

9.  U.S. Patent No. 3,409,916 (Billig et al.) (A602.)

10. U.S. Patent No. 3,466,676 (Barrera et al.) (A609.)

11. U.S. Patent No. 3,530,512 (McBride et al.) (A621.)

12. U.S. Patent No. 4,413,361 (Wolf et al.) (A632.)

13. U.S. Patent No. 5,884,347, Figs. 1 and 2 (Yurchison et al.) (A645-646.)

14. U.S. Design Pat. No. D427,693 (Mussa) (A652.)

15. U.S. Design Pat. No. D420,145 (Mussa) (A663.)

**4)    Construction of the '817 Patent Claim**

On August 29, 2012, the District Court issued a claim construction order

wherein the construction of the single claim in the '817 Patent was presented.

(A401-411.)  The District Court's verbal claim construction is copied verbatim

here as follows:

> The claimed design is an above-ground, oval-shaped pool with side-struts, and additional elements or features, as shown in the '817 patent drawings. Whatever functional role may be played by any element or feature of the pool depicted in the drawings is not a part of the claim, and should therefore be disregarded; but the design of those same elements or features is part of the claim.  The elements or features referred to include, but are not limited to the following as depicted in the drawings: the tubular top; side-struts; side-straps; angled and

11

bulging side-walls; rounded, angled and bulging end walls; and segmented panel walls of varying widths, connected by seams and creating a pattern as seen from above. (A410.)

**5)    Evidence of Similarity From the Prior Case of *Sofpool LLC v. Intex Recreation Corp.***

Sofpool previously litigated a case through to a jury trial involving the same '817 Patent in the Eastern District of Texas (Case No. 2:2007cv00097, E.D. Texas; "Intex Case"). (A471.)  The Intex Case was subject to a different legal standard in 2008, which required testing infringement under both an ordinary observer standard, as it existed at the time, combined with a "points of novelty" analysis. Under the old legal standard for determining design patent infringement, Sofpool lost its jury trial.  Sofpool appealed and during the time of the appeal in 2008, the case of *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665 (Fed. Cir. 2008) was handed down, which eliminated the "points of novelty" test and now required that the ordinary observer test be applied with a reference background of prior art. See *Egyptian Goddess*, 543 F.3d at 678.  After this change in design patent law, Sofpool saw itself in a favorable position on the issue of infringement; as a result, Sofpool and Intex came to a full monetary settlement of the case.  (A471.)

The Intex Case revealed significant evidence regarding the substantial similarity of the '817 design to the Intex oval above-ground pool design, which is substantially similar to the current Summer Escapes™ Accused Product sold by KMBL.

12

a)    <u>Defendant's Expert Stephen C. Visser Testified That an
Ordinary Observer Would be Confused by the Nearly Identical
Intex Pool</u>

In the Intex Case, KMBL's current infringement expert Stephen C. Visser,

testified that the Intex pool, was substantially similar in appearance to the '817

above-ground pool design.  His sworn testimony follows:

Q.    Now do you see Fig. 7?

A.    Yes, I do.

Q.    Where does that come from?

A.    The '817 Patent.

Q.    And what is above on top?

A.    That looks like the Sofpool production model.

Q.    And what is below it?

A.    The Intex production version.

Q.    Does—is your testimony, again, does the Intex pool look
      similar—let's start with hat – to Fig. 7?

A.    There are similarities.

Q.    And would you say that they look substantially similar, sir?

A.    I would say the ordinary observer could confuse these.

Q.    I'm sorry?

A.    The ordinary observer could confuse these.

Q.    Could confuse these?

A.    Yes.

(A670-671.)

13

In the following montage, the Intex pool, the Accused Summer Escapes™ pool, and a similar view of the '817 Design are presented for comparison of similarities (note all designs shown at same approximate height and therefore proportions are believed to be correct) (A1338-1339, A1342-1345, A131-135):


*Intex Pool*


*Accused Product*


*Fig. 6*


*Intex Pool*


*Accused Product*


*Fig. 4*

14

b)  In Closing Arguments During the Intex Case, Intex's Counsel Conceded the Similarity Between the Intex Pool and the '817 Design

Mr. Visser's opinion on the similarity of the Intex design to the '817 design was reiterated and emphasized again by Intex's counsel in closing arguments. (A1374.)  This additional evidence is lent to add further weight toward viewing the importance and relevance of comparing the Intex vs. the '817 Design in view of the Summer Escapes™ vs. the '817 Design.  The fact that Mr. Visser's opinion on similarity has flip-flopped so radically in the face of very similar looking accused products should be viewed with suspicion.

c)  The District Court Noted Multiple Undisputed Similarities Between the '817 Design and Accused Product

The District Court explicitly stated that "At first glance, the accused product appears to be within the scope limitation of the claimed design." (A10.)  The District Court went on to note the following undisputed similarities between the '817 design and the Accused Product in its decision:

> "The claimed and Accused Products are both for an oval, above-ground pool… Both designs feature a tubular top… Both designs feature side struts along their long sides, stretching from just below the tubular top, to the ground… Both designs feature side straps that run underneath the pool and connect the struts where the struts meet the ground…Both designs have angled side walls with a curve or bulge at the bottom, just before the structure meets the ground… Both designs contain segmented side walls." (A10-11).

15

So that the District Court's opinion on the similarity of the Accused Design and Patented Design could not be more clear, the District Court differentiated Sofpool's case from the case of *Competitive Edge, Inc. v. Staples, Inc.,* where the accused and patented designs were found to lack similarity.  See *Competitive Edge, Inc. v. Staples, Inc.,* 763 F. Supp. 2d 997, 1012 (N.D. Il), *aff'd without opinion at Competitive Edge, Inc. v. Staples, Inc.* 2011 U.S. App. Lexis 4114 (Fed. Cir. 2011).  (A1690-1691.)

        d)     <u>Further Undisputed Similarities in Overall Effects Between the '817 Design and the Accused Product Not Mentioned by the District Court in its Decision</u>

As part of its summary judgment motion in the District Court, Sofpool filed a Statement of Undisputed Facts.  (A457-468.) ("Sofpool's SUF").  In addition to the similarities between the designs noted by the District Court in its summary judgment order (A10-11), the Sofpool's SUF noted additional similarities including the smooth surface of the pool sides possessed by both the Accused Product and the Patented Design, as well as the shadow effect caused by the overlapping top tube of both the Accused Product and Patented Design; this shadow effect clearly being a component of the '817 Design as shown by horizontal shading beneath the top tube. (A460-462.):

16



*Smooth Sides*

*Fig. 6*

*Shadow Effect*

### 6)      Sofpool Patent-Marked Commercial Embodiments

Sofpool marked its commercial embodiments with its '817 Patent number (A1609.)  The Sofpool commercial embodiments which were marked with the '817 Patent number came in different price ranges, namely the more expensive Sofpool™ brand (A1596.) and the less expensive Congo™ brand.  (A1602-1606.) The different Sofpool products also varied with regard to their length and width proportions.  To wit, the Sofpool™ brand pools were sized in width dimensions of 11', 14' and 17'. (A1338.)  Therefore the Sofpool™ brand commercial embodiment varied by a magnitude of 55% in width. (A1338.)  The height dimension for the Sofpool products as well as that of the Summer Escapes products remained fairly constant at between three-and-a-half-feet to four feet high.

17

(A1677.) KMBL's Accused Product came in different sizes, namely width and length of 9' x 15' but were also all about four feet tall at 42". (A1365.) Some exemplary Sofpool commercial embodiments (A1596, A1602-1606.) are shown below alongside similar views from the '817 Patent drawings (A131-135.):




*Sofpool™ brand 14'x 23' Pool*                 *'817 Patented Design*



*Sofpool™ Brand 14' x 20' Pool*



*Sofpool™ brand 17'x 50' Pool*



*Fig. 11*

*'817 Patented Design (long version)*





*Fig. 6*

*Congo™ brand 11' x 22' Pool*            *'817 Patented Design*



*Congo™ brand 11' x 22' Pool*



*Fig. 7*

*'817 Patented Design*



*Congo™ brand 11' x 22' Pool*



*Fig. 9*

*817 Patented Design*



*Congo™ brand 11' x 22' Pool*



*Fig. 8*

*'817 Patented Design*

### 7)    The District Court's Confusion

The District Court ruled in its final order that there was no infringement because the '817 Design was that of a "squat, wading-type" pool and the Accused Product had a "taller and more elegant appearance." (A11-12.)  However, despite noting a difference in proportion, the multiple similarities noted by the District Court caused it to state that "at first glance" the Accused Product fell within the scope of the '817 Patent. (A10.)  During the summary judgment hearing in this case, the District Court distinguished this case from the *Competitive Edge* case where the Federal Circuit found no similarity between the patented and accused designs. See *Competitive Edge, Inc. v. Staples, Inc.,* 763 F. Supp. 2d 997, 1012 (N.D. Il), *aff'd without opinion, Competitive Edge, Inc. v. Staples, Inc.,* 2011 U.S. App. Lexis 4114 (Fed. Cir. 2011):

> "But this is -- you know, this isn't the same. This case, I mean, *isn't the same as that case because there are sufficient similarities* that one could say what you did was take their design and modify it in ways that aren't really relevant to the similarity." (A1690-1691.) (*emphasis ours*)

The District Court's statements regarding the '817 Patent illustrating a wading pool was also in contravention of the file history of the '817 Patent which clearly entitled the '817 Patent as an "Above Ground Swimming Pool" (A131.); nowhere in the patent or file history is a wading pool stated or implied as an embodiment.  (A131-135, A200-252.)  This mistake caused the District Court to segue into a legally incorrect line of analysis where it considered the *impact of*

21

*functionality* of a wading pool versus a swimming pool and how this would operate to deceive an ordinary observer. (A1680.) This violated the Court's own Markman construction which specifically prohibited consideration any functional aspects of the Patented Design. (A410.)

Despite acknowledging the substantial similarity between the Patented Design and the Accused Product, the District Court did not engage in any prior art comparison between the Patented and Accused Products to determine the issue of infringement, which as a matter of law was required once such similarity is found. (A10-A13, A1698.) During the summary judgment hearing, Sofpool advocated for such an analysis and stated that the Court should find that the Patented Design had novel ornamental features that departed conspicuously from the prior art, which the Accused Product copied. (A1673-1676.)

The District Court's deviations from the law were also punctuated by admissions of confusion.[1] (A1660, A1669, A1676, A1703-1704) Sofpool intends no indictment of the District Court by stating this, as Sofpool believes the District Court did its best to wrestle with the issues; albeit in the wrong legal context. However, this is Sofpool's last opportunity to resurrect its case, and if the District Court's confusion led in any way to a wrong decision, these facts are worth mentioning here so that Sofpool can have its concerns fully aired.

---

[1] The summary judgment hearing transcript reveals at least five times where the District Court called out its confusion.

## SUMMARY OF ARGUMENT

**A.    The District Court Erred by Failing to Properly Apply the Two-Pronged Ordinary Observer Infringement Test as Applied in *Egyptian Goddess* and its Progeny**

Under *Egyptian Goddess* and its progeny, to show design patent infringement under the proper test, an ordinary observer, familiar with prior art designs, would be deceived into believing that the accused product is the same as the patented design. *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 681 (Fed Cir. 2010). This is a two-pronged test that first requires a side-by-side comparison between the Accused Product and the Patented Design. *Competitive Edge, Inc. v. Staples, Inc.,* 763 F. Supp. 2d 997, 1011 (N.D. Il), *aff'd without opinion, Competitive Edge, Inc. v. Staples, Inc.,* 2011 U.S. App. Lexis 4114 (Fed. Cir. 2011) ("A side-by-side comparison shows that the two designs, taken as a whole, create overall visual impressions that would appear plainly dissimilar to the ordinary observer.") If, the side-by-side comparison reveals that the Accused Product is not substantially similar in overall appearance to the Patented Design, then the first prong is not satisfied and the analysis ends. However, if the side-by-side comparison reveals that the Accused Product and Patented Design are substantially similar, then the second prong of the ordinary observer test must be applied. The second prong involves a three-way comparison between the Accused Product, the Patented Design, and the relevant prior art. *Egyptian Goddess*, at 681-682.

The District Court erred by not applying the second prong, namely, the three-way prior art analysis in this matter. The District Court clearly stated that Sofpool had satisfied the first prong, that is Sofpool had established substantial similarity between the Accused Product and Patented Design. In fact, the District Court specifically stated that Sofpool's case was different from cases such as *Competitive Edge*, which was a case where the accused product and patented design were so different that the first prong was not satisfied. See *Competitive Edge, Inc. v. Staples, Inc.*, 763 F. Supp. 2d 997, 1012 (N.D. Il), *aff'd without opinion,* 2011 U.S. App. Lexis 4114 (Fed. Cir. 2011). Given that, according to the District Court, Sofpool had met the first prong of the ordinary observer test, Sofpool was entitled then to a fair application of the second prong; that is, the three-way prior art test.

No such three-way test was applied by the District Court, which was error as a matter of law. In this appeal, Sofpool asks the Federal Circuit Court of Appeals to merely "finish the job" that the District Court should have done. That is, Sofpool is requesting this Court to apply the three-way prior art analysis. Such application, should reveal that the Patented Design departs conspicuously from the prior art and that the Accused Product sold by KMBL has copied these novel departing features. A determination of infringement should not be hard to conclude here.

24

## ARGUMENT

## STANDARDS OF REVIEW

The determination of whether a design patent claim, once properly interpreted, is infringed is a question of fact reviewed under the clearly erroneous or substantial evidence standards. *Oddzon Prods., Inc. v. Just Toys, Inc*., 122 F.3d 1396, 1405, 43 U.S.P.Q.2d 1641, 1647 (Fed. Cir. 1997) ("Design patent infringement is a question of fact, which a patentee must prove by a preponderance of the evidence."); *L.A. Gear, Inc. v. Tom McAn Shoe Co*., 988 F.2d 1117, 1124, 25 U.S.P.Q.2d 1913, 1918 (Fed. Cir. 1993). The question of infringement is a factual one, to be proven by preponderant evidence and to be reviewed on appeal for clear error. *Mannesmann Demag Corp. v. Engineered Metal Products Co.*, 793 F.2d 1279, 1282, 230 USPQ 45, 46 (Fed. Cir. 1986). A grant of summary judgment is reviewed de novo; in contrast, a denial of a motion for summary judgment is reviewed for abuse of discretion. *Elekta Instrument Int'l, Inc*., 214 F.3d 1302, 1306, 54 U.S.P.Q.2d 1910, 1912 (Fed. Cir. 2000) ("In reviewing a denial of a motion for summary judgment, we give considerable deference to the trial court, and will not disturb the trial court's denial of summary judgment unless we find that the court has indeed abused its discretion.'" (citation omitted)); *Petrolite Corp. v. Baker Hughes Inc.*, 96 F.3d 1423, 1425, 40 U.S.P.Q.2d 1201, 1203 (Fed. Cir. 1996). A "district court by definition abuses its discretion when it makes an error of law." *United States v. Kayser-Roth Corp.*, 272 F.3d 89, 100 (1st Cir. 2001).

**A.      At the District Court Level, this was a Case Punctuated By Confusion**

Some insight into the positions that KMBL took during oral argument is necessary for the Federal Circuit Court to understand how the District Court in this case became confused.  This confusion led the District Court to the wrong legal "fork in the road" on deciding infringement, despite the fact that the District Court noted the substantial similarity between the Accused Product and Patented Design. (A10.)  It did not have to be so, and Sofpool seeks relief in finding its '817 Patent infringed, upon the correct application of the law under *Egyptian Goddess* and its progeny.

The District Court was clearly searching for the right path to take and started off needing help with determining what and who the ordinary observer "familiar with the prior art" was.  (A1655-1657.)  The fact that the "ordinary observer" was a "hypothetical construct" of someone with knowledge of the prior art who would determine the ultimate question of infringement, greatly troubled the Court. (A1663.)  The Court correctly noted that the test for design infringement is to ask whether the ordinary observer is deceived by the Accused Product, thinking it to be the Patented Design.  (A5.) See *Gorham Co. v. White,* 81 U.S. 511, 526-527 (1871).  However, this is where things appeared to go wrong, as the Court could not see a way forward through what it perceived as confusion in the law.  It even proposed just letting the Federal Circuit sort it all out.  (A1664.)  KMBL's attorney

seemed to feed on the Court's confusion stating at one point he would like to go "off the record" and tell the Court what he "really thought" about the state of design patent law. (A1663.) KMBL, informed the District Court that definitive guidance in determining the standards to follow was lacking because none of their cited cases since *Egyptian Goddess* had proceeded to the trial stage. (A1663.) If a jury trial case was that important to defining standards, KMBL could have cited the *Apple v. Samsung* case, as by the time of summary judgment arguments, (January 10, 2013), the trial of *Apple v. Samsung* had concluded on August 24, 2012. *Apple Inc. v. Samsung Electronics Co., Ltd.,* 2013 U.S. Dist. LEXIS 13240 *12 (N.D. Cal.). In *Apple*, design patents were central to the $1.05 billion dollar jury verdict, so it provides excellent data points for this appeal, especially on how to legally proceed in analyzing an Accused Product against a Patented Design in a trial scenario.

The data point from Apple that is most helpful here are the jury instructions that were certified in that case. (A1618-1620.) Jury instructions are helpful because they define legal standards in layman's terms. Specifically, jury instruction No. 46, which detailed many of the steps a jury should apply in determining design patent infringement, is especially helpful in defining the role of the prior art, which is a role that seemed to confuse the District Court here. (A1619.) Jury instruction No. 46 and No. 47 from *Apple v. Samsung* were given to

27

the District Court by Sofpool to aid it in its deliberations. (A1592-1621, A1618-1619.)  In combination with *Egyptian Goddess* and its progeny, Jury Instruction No. 46 from the *Apple* case provides the "way forward" that the District Court failed to find here.[2]

**B.   Apart From the Fact that Sofpool's Above-Ground Swimming Pool Design Functions as a Vessel to Hold Water, the Remainder of Its Design is Ornamental**

Sofpool patented an above-ground swimming pool, which, in its basic sense functions as a vessel to hold water.  However, the remainder of Sofpool's design combines ornamentally with function to provide an overall appearance of something very different than what was found in the prior art.[3] (A409.)  Given that design patents cover designs having industrial applicability, the functional-industrial aspects can combine with ornamental aspects and be protected; however, only the ornamental aspect is protectable.  *David A. Richardson v. Stanley Works, Inc.,* 597 F.3d 1288, 1294 (Fed. Cir. 2010). In analyzing designs for design patent

---

[2] So that it can be put to rest that instruction No. 46 was proper, Samsung settled this issue when it attacked  instruction No. 46 post-trial, for failing to instruct the jury to factor out functional elements from the designs (e.g. a "filtering instruction.")  *Apple Inc. v. Samsung Electronics Co., Ltd.,* 2013 U.S. Dist. LEXIS 13240 *16-*18 (N.D.Cal.) This was done in the context of Samsung's JMOL seeking to have the *Apple* court determine that due to what it perceived was an improper jury instruction, as a matter of law, its design patents were not infringed; however Samsung's JMOL was denied in this regard. *Apple Inc. v. Samsung Electronics Co., Ltd.,* at *18.

[3] See prior art in Section IA(3) above.

infringement, the functional aspects must be ignored.  *David A. Richardson v. Stanley Works, Inc.,* 597 F.3d, at 1294.  The requirement for elimination of functional aspects from the analysis insures that the scope of a design patent claim is not extended to functional aspects.  *Id.*, at 1293. During claim construction, this deference to scope was properly observed by the District Court:  ("Whatever functional role may be played by any element or feature of the pool depicted in the drawings is not a part of the claim, and should therefore be disregarded; but the design of those same elements or features is part of the claim.") (A410.)

The generally accepted standard for determining if something is "purely functional" or not is whether there are **alternate designs** for performing the same function. *See Avia Group Int'l Inc. v. L.A. Gear California, Inc.*, 853 F.2d 1557, 1563 (Fed. Cir. 1988).  If alternative designs exist for an element of a Patented Design, it is not purely functional and can be considered in a comparison with an Accused Product.

During the Markman phase of this case, Sofpool clearly identified various aspects of the '817 design and was able to show that alternative designs existed for all the features of the Patented Design. (A106-112.)  Sofpool was able to show that its prominent oval top tube, with a round cross-section, was an alternate design when compared to round pools which had round top tubes having square cross sections. (A109.)  The sides of the Sofpool were shown to have gentle angles and

bulges that were different from oval pools with straight sides (no sloping angles, no bulges) or round pools having more prominent angles and bulges. (A107-109.) The generally U-shaped side struts on the Patented Design were also shown to have alternate designs in other prior art pools. (A106-107.) The segmented panel walls were shown to have alternate segmented designs elsewhere in the prior art. (A111-112.) Even the "ovalness" of the Patented Design was countered by other oval pool designs which appeared different, even though they were oval-shaped. (A112-113.) The District Court acknowledged in its verbal Markman claim construction, that these previously mentioned ornamental aspects were to be considered when comparing the Accused Product to the Patented Design:

> "The elements or features referred to include, but are not limited to the following as depicted in the drawings: the tubular top; side-struts; side-straps; angled and bulging side-walls; rounded, angled and bulging end walls; and segmented panel walls of varying widths, connected by seams and creating a pattern as seen from above." (A410).

## C. The Ornamental Elements of the '817 Design Must Be Considered In The Context of the "Overall Design"

A major dispute throughout this case was with regard to the context in which the ordinary observer was to consider the competing designs. KMBL took a strategy of arguing elements in isolation, without a view toward the overall designs. (A116-117.) This tactic was in line with a "points of novelty" approach to highlight small differences between the Accused Product and Patented Design.

30

This tactic started with KMBL's expert, Stephen Visser whose infringement report was, from beginning to end, a catalogue of "points of novelty" analysis. (A1110-1139.) Taking the struts, for example, Mr. Visser emphasized the importance of "sharp corners" versus "rounded corners", in his disembodied photographs, totally in isolation from the overall design. (A1120.) Angles of end walls were shown in isolation in the form of blacked-out figures which eliminated any other effects of the '817 Design. (A1118). Lower edges near the bottom of each design were scrutinized, again in isolation. (A1116). This carried into the Markman phase where KMBL advocated for an interpretation of the struts being precisely "16 degrees" in relation to the pool sidewalls, which of course was a figure that the Patented Design could not match! (A87.) Finally, during the summary judgment hearing, KMBL brought in a PowerPoint® presentation of strictly points of novelty matter which ignored overall effects. (A1680, A1700.)

This is how it went throughout this case, and perhaps, it was a successful strategy in getting the District Court to consider proportion in isolation from the overall competing designs, because the element of proportion was seemingly the sole focus of the Court in its decision which expressly touted the '817 Patent's "wading pool" versus KMBL's "tall and elegant" pool. (A13.) *This seemed doubly odd, because the Court had made no mention of, or applied any special emphasis on the element of proportion in its verbal claim construction*. (A410.)

The "points of novelty" approach taken by KMBL, and which may have over-influenced the Court, is an incorrect approach as a matter of law. *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008). ("..we hold that the "points of novelty" test should no longer be used in the analysis of a claim of design patent infringement.") . That is not to say that a court cannot consider differences between two designs, but those differences must be considered in the context of the overall designs. *Crocs, Inc. v. International Trade Commission*, 598 F.3d 1294, 1303 (Fed. Cir. 2010) ("the deception that arises is a result of similarities in the overall design, not of similarities in ornamental features in isolation."). While proportion is an element that can be considered, like other elements, it must be considered in terms of the overall design. See *Lee v. Dayton-Hudson Corp.*, 838 F.2d 1186, 1188 (Fed. Cir. 1988) ("the district court correctly viewed the design aspects of the accused devices: the wooden balls, their polished finish and appearance, the proportions, the carving on the handle, and all other ornamental characteristics"). This emphasis on comparing overall designs was part of Jury Instruction No. 46 in the *Apple v. Samsung* trial, which is further validation of this approach. (A1618-1619.) ("If you find by a preponderance of the evidence that the *overall appearance* of an accused Samsung design is substantially the same as the *overall appearance* of the claimed Apple design patent…").

**D.**    **A Comparison of the Patented Design Side-By-Side with the Accused Product in Terms of the Overall Designs is Proper.**

The *Crocs* case is instructive of the importance of referring to the overall appearance of designs in doing a side-by-side analysis between an accused product and a patented design.  *Crocs, Inc. v. International Trade Commission*, 598 F.3d 1294, 1394 (Fed. Cir. 2010) ("The proper comparison requires a side-by-side view of the drawings of the '789 patent and the accused products").  While *Crocs* strictly prohibited a points-of-novelty analysis, it did permit an analysis of ornamental features in the context of "overall effects" created by said ornamental features. *Crocs*, at 1305-1308.  ("The overall effects of the design in the '789 patent and the Crocs shoes are the same.")  In the following side-by-side comparison, the overall effects between the Accused Produce and Patented Design are compared in terms of the ornamental aspects of the features identified for comparison by the District Court in its Markman determination.[4]  (A410.)  (e.g. "the tubular top; side-struts; side-straps; angled and bulging side-walls; rounded, angled and bulging end walls; and segmented panel walls of varying widths, connected by seams and creating a pattern as seen from above."  Photos are from the case record (A529-538.):

---

[4] FIGS. 6-10 most relevant for comparison with the Accused Product.  Views shown at approximately the same height. Views taken from District Court Docket Nos. 67 and 81-2. (  ).

1)   **An overall ornamental effect of an above-ground swimming pool with smooth sides having gentle angles and bulges.**





2)    Another overall ornamental effect of the prominent oval-shaped top tube having a round cross section wherein the oval top tube follows the oval pool shape along the top of the pool, while overlapping the sides and joining with the top of the sides.



Fig. 8



Summer Escapes 15'X9'X42"

3)    The overall effect of the top tube overlapping the sides creates an ornamental shadow.



Fig. 9

Shadow caused by overlapping top tube



4)   **A further overall effect of generally U-shaped side struts joining beneath the top tube and being cast at an angle and retained at their bottoms by straps which extend horizontally a distance from the bottom of the pool sidewall.**



Fig. 7

Summer Escapes 15'X9'X42"

Generally U-shaped struts joining beneath the top tube



Fig. 9

Generally U-shaped struts being cast at an angle and retained at their bottoms by straps which extend horizontally a distance from the bottom of the pool sidewall

5)    **The overall effects considered in perspective view.  Consider again the "roundness", "ovalness" and visually- overlapping quality of the top tube; the generally U-shaped struts, their attachment position to the pool and their angled/offset appearance; the smoothness of the sides; the contours followed by the seams; the ornamental appearance of the gentle angles and bulges; the "ornamentalness" of the shadow effect caused by the top-tube overlap and the sizing of the panels.**



Summer Escapes 15"X9"X42"



Fig. 6

6)    **Bottom view of the Accused Product Shown in a Filled Condition, Not Accessible, and Therefore Should be Ignored -**

KMBL failed to provide bottom view photographs of the Accused Product in a filled condition.  Therefore, no fair side-by-side comparison of ornamental features of the pool bottoms can be made between the Accused Product and the



Fig. 10



Patented Design.  The case law makes it clear that the infringement inquiry extends to features visible at any time in the "normal use" lifetime of an accused product. *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1241 (Fed. Cir.

2009). "Normal use" in the design patent context extends from the completion of manufacture or assembly until the ultimate destruction, loss, or disappearance of the article. *Id.* In the present case, the KMBL's presentation of an unassembled, unfilled bottom view of a Summer Escapes pool does not qualify as a product presented in "normal use" format. Especially when the '817 Patent drawings all show the pool in a filled condition. Therefore, any un-assembled, un-filled bottom views cannot be considered in the infringement analysis.

**E.    Sofpool Has Proven By a Preponderance of the Evidence that the '817 Patent is Infringed by KMBL's Accused Product**

**1)    The Threshold Requirement of Substantial Similarity Between the Accused Product and Patented Design has, According to the District Court's Own Words, Been Met.**

*Egyptian Goddess* has set up a two-pronged approach to analyzing the substantial similarity between an Accused Product versus a Patented Design. *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008). The first prong is to determine if the two competing designs are substantially similar in appearance, which is the classic test of *Gorham*, where "sameness of effect upon the eye" determines a type of "first pass" at substantial similarity. ("…sameness of effect upon the eye, is the main test of substantial identity of design") *Gorham Co. v. White,* 81 U.S. 511, 527 (1871).

The side-by-side comparison of the Accused Product against the '817 Design performed above in Section II(D)(1-6) was intended to address this first prong of the *Egyptian Goddess* ordinary observer test, namely whether the two overall designs evince a "sameness of effect upon the eye."

The District Court seemed to address this first prong when it stated that "…the court's initial step is to determine whether the accused design is even within the limitation on scope that the patentee has imposed, through his patent drawings." (A10.)  After this statement, the Court confirmed the substantial similarity of the designs, noting that "at first glance" the Accused Product was within the scope of the '817 Patent. (A10.)  The District Court further differentiated this case from the *Competitive Edge* case, which was a positive indication that Sofpool had met the first prong.  (1690-1691.)

However, after reaching this conclusion on similarity,  the Court should have applied the second prong of Egyptian Goddess, which is to do a three-way comparison between the Patented Design, the Accused Product and the prior art. *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d, at 678.  The fact that the District Court did not do so, was clear error, and is at the heart of this appeal.

As further evidence that this first prong was met, Stephen Visser's testimony from the original Intex case noting the similarity of the Intex pool to the '817 Design is relevant. (A670-671.)  The present Court can weigh its value because the

Intex pool was very similar in appearance to the Accused Product.  See Section

I(A)(5)(a), above. Although the Intex case was pre-*Egyptian Goddess*,

nevertheless, like this case, it was still beholden to the *Gorham* case from 1871,

which touted that deception arises from the "sameness of effect upon the eye"

between competing designs. *Gorham Co. v. White,* 81 U.S., at 527-528.  For Mr.

Visser to flip-flop his opinion on the Intex vs. the Accused Design, should be

viewed suspiciously. (A1110-1139.) In closing arguments to the jury, Intex's

counsel even conceded the similarity between the Intex pool product and the '817

Design. (A1374.) ("The oval pools we told you from day one, look similar.  We're

not going to come in here and tell you something different that your eyes will

convince you is not true.  That's not the way we operate.").  This evidence from

Intex of a similar design, coupled with the District Court's comments on similarity

should be weighed in favor of Sofpool proving, at least, that the Accused Product is

similar to the Patented Design and that the first prong of *Egyptian Goddess* is met.

> **2)    Once Similarity Between an Accused Product and Patented Design
> is Established, the Second Prong of the Ordinary Observer Test
> Requires Engaging in a Three-Way Comparison With Prior Art.**

The first requirement of establishing similarity between the Patented Design

and Accused Product is done to determine whether a three-way prior art

comparison is even necessary.  *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d, at

678. ("In some instances, the claimed design and the Accused Product will be

sufficiently distinct that it will be dear (sic) without more that the patentee has not met its burden of proving the two designs would be "substantially the same."") As *Egyptian Goddess* notes, there are some situations where two competing designs are "worlds apart" with regard to their overall appearance. There are many examples of cases where the competing designs were sufficiently distinct such that no three-way comparison with prior art was warranted. See, e.g. *David A. Richardson v. Stanley Works, Inc.,* 597 F.3d 1288, 1295-1296 (Fed. Cir. 2010). (After factoring out functional elements, the Federal Circuit found that the trial court's findings that the Richardson's multi-function tool was significantly different in appearance when compared to the "stream-lined" appearance of the Stanley tool.); See Also, *Competitive Edge, Inc. v. Staples, Inc.,* 763 F. Supp. 2d 997, 1012 (N.D. Il) *Aff'd without opinion, Competitive Edge, Inc. v. Staples, Inc,* 2011 U.S. App. Lexis 4114 (Fed. Cir. 2011), which involved calculator designs, is worth noting. ("Here, the scalloped edges in the patented design when compared with the smooth edges of the Accused Product, and the hour-glass shape of the Accused Product are important aspects which dominate the overall visual appearance of the respective designs….Considering all of these asserted distinctions together in the context of overall ornamental design, no reasonable jury could find that Competitive Edge has met its burden of showing that an ordinary observer would believe the Accused Product to be the same as the patented design, or even a colorable imitation of the patented design.")

41

In *Richardson*, and *Competitive Edge*, the courts there were extremely critical of the patentee's case; in fact they came out to say clearly that there was no similarity of designs that would warrant a prior art analysis.  Not so here, as the Court's statements on similarity and delineation away from the *Competitive Edge* case show that the Court embraced the substantial similarity existing between the Accused Product and Patented Design.  As such, it is required that Sofpool's Patented Design be compared against the prior art and Accused Product to determine the infringement outcome of this case.  *Egyptian Goddess* at 680-682

    **3)**    **Egyptian Goddess Noted Different Categories of Cases for Comparison with Prior Art; Those Where the Patented Design is Close to the Prior Art and those Where the Patented Design Conspicuously Departs from the Prior Art.**

The District Court had, by noting  the substantial similarity of the Accused and Patented Designs, pegged Sofpool's case as one which required a three-way prior art comparison to determine the ultimate issue of infringement.  This was the District Court's error of law because no such three-way analysis was taken up. Instead, the District Court took the myopic tact of focusing on the element of proportional differences. (A12.)

*Egyptian Goddess* actually creates two more categories of cases, where prior art analysis as required by the ordinary observer test, truly separates the infringed designs from the non-infringed designs.  *Egyptian Goddess* at 678. ("In other instances, when the claimed and accused designs are not plainly dissimilar,

resolution of the question of whether the ordinary observer would consider two designs to be substantially the same will benefit from a comparison of the claimed and accused designs with the prior art…").  From this passage in *Egyptian Goddess* we realize that an initial visual determination of substantial similarity (Gorham's "sameness of effect upon the eye") must be confirmed by reference to the prior art. A reference with the prior art might reveal that seemingly similar designs are not similar at all, once the novel aspects of a patented design are weeded out and compared to an accused design.  Alternatively, reference to the prior art can show that the patented design is truly novel in many respects and "departs conspicuously from the prior art." *Egyptian Goddess* at 677. ("If the accused design has copied a particular feature of the claimed design that departs conspicuously from the prior art, the accused design is naturally more likely to be regarded as deceptively similar to the claimed design, and thus infringing.").  Sofpool falls into the latter case of a "conspicuously departing" design as the following analysis will show.

          a)     <u>Cases Where the Patented Design is Close to the Prior Art.</u>

In a first category of case, prior art can be a significant determiner of an outcome for infringement or non-infringement.  In situations where a patented design is close to prior art designs, a three-way analysis with the prior art will determine which overall effects of a patented design are novel, and therefore worthy of comparison with the Accused Product to determine infringement.

*Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d, at 681. *Egyptian Goddess* was this category of case. *Id.* There, the patented design was a nail buffer having four sides with buffers attached to only three sides and a hollow square cross-section. The Accused Product was a four-sided buffer with buffers attached to all four sides and a hollow square cross-section. *Id.* The prior art involved two buffers; one with a triangular hollow cross section, and three buffers attached to all three sides; and a second buffer with a square solid cross-section with four buffers attached to all four sides. *Id.* Visually, the three-way analysis required under the ordinary observer test stacked up like this:



44

The *Egyptian Goddess* court held no infringement on the mere fact that the only novel aspect of the patented design was that it lacked a buffer on one of its four sides, while the Accused Product had buffers on all of its four sides, similar to the prior art, which also  all had buffers on all sides. *Id.* at 681-682.  Therefore, since the Accused Product did not lack a buffer on one of its sides, the novel aspect of the patented design was not present in the accused product.  *Id.*

*Egyptian Goddess* was an example of a crowded art of similar buffer designs, wherein the Accused Product was closer to the prior art than the patented design.  This "hair splitting" logic is what tilted the case in favor of non-infringement. *Id.* at 681-682.  This logic has been followed in subsequent cases where the patented design was visually close to the prior art.  See *Wing Shing Products Co. Ltd v. Sunbeam Products, Inc. et al.* 665 F. Supp. 2d 357, (SDNY 2009); *Affirmed without opinion* by *Wing Shing Prods. (BVI) Co. v. Sunbeam Prods.*, 2010 U.S. App. LEXIS 9189 (Fed. Cir. 2010) (Comparison of patented coffee maker design with prior art coffee makers in a crowded art revealed only ornamental "bull-nose" base portion was novel; the accused design lacked a similar bull-nose base; held no infringement).  In *Apple v. Samsung*, jury instruction no. 46 incorporated this law by including an instruction on visually close prior art. (A619.)

b)    <u>Cases Where the Patented Design Departs Conspicuously From the Prior Art</u>.

Finally, another situation relating to prior art where the Patented Design and Accused Product are substantially similar relates to where the Patented Design has design features which *depart conspicuously from the prior art*.  If the Accused Product has copied a particular feature of the Patented Design that departs conspicuously from the prior art, the Accused Product is naturally more **likely** to be regarded as deceptively similar to the claimed design, and thus infringing. *Egyptian Goddess,* at 677.  In this scenario, initial suspicions of infringement are merely confirmed by the fact that the prior art departs conspicuously from the Patented Design and the Accused Design copies these departing features. Prior art analysis in this scenario does not alter the initial suspicion of substantial similarity (e.g. *Gorham's* "sameness of effect upon the eye") between the Accused and Patented designs; prior art analysis only confirms that infringement has occurred. *Id.*  Following *Egyptian Goddess*, a number of district court cases addressed this category where the patented design departs conspicuously from the prior art.

In *Luv 'N Care Ltd v. Mayborn USA, Inc.* the defendant , Mayborn, moved for summary judgment on Luv 'N Care's ("LNC's") design patent claim.  *Luv 'N Care Ltd v. Mayborn USA, Inc.,* 898 F. Supp. 2d 634, 640 (SDNY 2012).  The subject matter was infant "sippy cups" and Mayborn attempted to point out numerous differences between the patented design and the accused design, similar

to KMBL's point of novelty strategy here. *LNC v. Mayborn,* at 644. However, the court found that when the overall designs were compared, that the accused Mayborn product was substantially similar to the patented cup design. *Id.*, at 645. The court then applied the prior art to find that the patented design departed conspicuously from the prior art. *Id.,* at 644. (" I find that the overall design of the '439 patent was not disclosed by any of the prior art."). Mayborn's summary judgment was denied. *Id.,* at 650.

In *Cobra Fixations Co. Ltd. v. Newell Operating Company*, the defendant, Newell, moved for a judgment of non-infringement or alternately for a summary judgment. *Cobra Fixations Co. Ltd. v. Newell Operating Company*, 2011 U.S. Dist. LEXIS 40239,  at *2 (D. NC 2011).  The *Cobra* court specifically referred to the two-pronged test of *Egyptian Goddess. Cobra Fixations Co. Ltd. v. Newell Operating Company*, 2011 U.S. Dist. LEXIS 40239 at *7-*8. ("With regard to the first stage of the infringement test, viewing the overall ornamental impression of the three sets of claimed and accused designs…. Moving to the second stage of the test, a comparison of the overall impression of the three sets of claimed and accused designs in conjunction with the prior art").  The *Cobra* court found substantial similarity between the accused and patented designs and that the prior art had no effect on altering that conclusion. *Id.,* at *8.  Newell's motion was denied. *Id*., at *9.

In *Apple v. Samsung*, the trial court incorporated instructions regarding situations where the patented design departs conspicuously from the prior art. (A619.) ("If the accused design includes a feature of the claimed design that departs conspicuously from the prior art, you may find that feature important in analyzing whether the overall appearance of the accused and claimed designs are substantially the same.")

### 4) Sofpool's Case is one which Departs Conspicuously From the Prior Art; The Three-Way Prior Art Comparison as Applied to this Case.

Previously herein, Sofpool established through a preponderance of the evidence that the Patented and Accused Designs are substantially similar in appearance, thus satisfying the first prong of the ordinary observer test under *Egyptian Goddess*. Therefore, having satisfied the first prong, the only thing left is to move on to the second prong of the ordinary observer test; that is to apply a three-way prior art comparison. This was the step that was not satisfied by the District Court and was error as a matter of law.

It has been Sofpool's contention herein that prior to creating the oval above-ground pool prototype in 2003, there was nothing like the '817 Design. In fact, Sofpool's oval pool design is so different that Sofpool contends that it is in the class of cases where the Patented Design departs conspicuously from the prior art. The best proof of this is the comparison between the Patented Design and the prior

art from this case. In fact, the great majority of the prior art from this case could be disqualified for the mere fact that most of the pools from the prior art are not even of an oval shape. The prior art, as will be seen, discloses square pools, round pools and odd-shaped pools. Even many of the oval shapes have squared-off appearances due to the fact that they disclose rigid-wall oval designs from utility patents. There is district court case law which advocates that such obviously dissimilar designs should not even be considered in the prior art analysis and can be weeded out. See *Parker v. Kimberly Clark*, 2012 U.S. Dist. Lexis 2565 (N.D. Il. 2012) (only prior art sanitary napkins having an hour-glass shape were compared against accused product and patented design.)

Nevertheless, in an abundance of caution, Sofpool will review each prior art design from this case, giving more treatment to the most relevant art, but less to what seems, based on shape alone, to be much less relevant art. Sofpool has arranged this three-way analysis in order of most relevant art first:

  a. *'817 vs. United States Design Patent No. D453,839 (RHO) AND Accused Product.*

A true and correct copy of the '839 (Rho) patent is attached as part of the appendix. (A543-549). Also Sofpool provided a Statement of Undisputed Facts ("SUF") which provided a comparison of Rho with the Accused Design and Patented Design in table format. (A460-462.) Photos of the Accused Design shown below are part of the case record (A529-538.) and are sized to

approximately the same height in each three-way comparison, so reasonably accurate proportions are retained.  Comparisons refer to ornamental aspects of the designs as noted in the District Court's claim construction, with an ultimate view toward overall appearance.

As seen in the three-way comparisons below, Rho has smooth sides and an oval appearance, but lacks an oval top tube having a round cross section.  Also Rho has no shadow effect because it completely lacks an oval top tube, unlike the Accused Design and Patented Design.  Rho is seamless and therefore lacks the contoured seams and differently sized panels which comprise the ornamental effects of both the Patented Design and Accused Design. Rho also has a completely different arrangement of 14 struts which surround the entire design; not so with the two-strut overall appearance of both the Accused Design and Patented Design.  Rho's sides are completely perpendicular and lack the gentle angle and bulged effect of the Accused and Patented Designs.  Rho is the closest prior art and clearly, the Patented Design departs conspicuously from Rho.  The Accused Design clearly is more similar to the Patented Design than to Rho, thus making infringement likely. See *Egyptian Goddess*, at 677.

**PERSPECTIVE VIEW:**



**Two U-shaped side side struts; held by straps at bottom**

*Fig. 6*

**contoured seams**     **Prominent top tube**

**panels varying widths**



Summer Escapes 15'X9'X42"

**No top tube**

**No seams**

**No panels**     **14 Struts surround pool**

51

**SIDE VIEW:**



**Prominent oval top tube**

**Bulge**

Summer Escapes 15'X9'X42"

*Fig. 7*

**Gently sloping angle**



**Perpendicular end walls, no slope, no bulge.**

**No oval top tube**

**TOP VIEW:**

**Prominent oval-shaped top tube with round X-section; overlaps**



*Fig. 8*

Summer Escapes 15'X9'X42"

**Seam pattern**

**2 struts**

**No oval overlapping top tube**

**14 Surrounding struts**

**END VIEW:**



**Prominent top tube overlapping sides creates shadow**

*Fig. 9*

**Gentle angled, bulging sidewalls**

**uniform surface, no shadow, no overlapping top tube**

**perpendicular sidewalls, no bulge, no angle**

             *b.    '817 vs. United States Design Patent No. D408,546 (CARREAU) AND Accused Product.*

A true and correct copy of the '546 (Carreau) patent is attached as part of the appendix. (A551-559). Also Sofpool provided a Statement of Undisputed Facts ("SUF") which provided a comparison of '546 Carreau with the Accused Design and Patented Design in table format.  (A460-462.)  Photos of the Accused Design shown below are part of the case record (A529-538.) and are sized to

approximately the same height in each three-way comparison so accurate

proportions are retained.  Comparisons refer to ornamental aspects of the designs

as noted in the District Court's claim construction with an ultimate view toward

overall appearance.

The '546 Carreau is not really relevant from a prior art comparison

standpoint because it is a round pool and not an oval pool.  Therefore a completely

different overall effect is provided by the '546 Carreau.  Nevertheless, it is given a

greater emphasis here to show how far Pierre Carreau went to create an entirely

new oval pool design that was unlike his prior round pool design.

**PERSPECTIVE VIEW:**



Oval shape, oval top tube

Contoured seams

*Fig. 6*

Summer Escapes 15"X9"X42"



**Round shape,**

**round top tube**

**Radically contoured seams**

*Fig. 1*

**SIDE VIEW:**

Gentle angle slope of end wall



*Fig. 7*

Summer Escapes 15'X9'X42"

**Less prominent end wall bulge**

**Sharp end wall angle**          **Highly Prominent end wall bulge**



*Fig. 3*

55

> c.    *'817 vs. Intex Round Pool AND Accused Product*

Photos of the Intex round pool shown below are part of the case record.

(A561.)  Photos of the Accused Design are part of the case record. (A529-538.)

Also Sofpool provided a Statement of Undisputed Facts ("SUF") which provided a

comparison of Intex with the Accused Design and Patented Design in table format.

(A460-462.) Due to its roundness, the Intex pool arguably should not even be

included in this three-way prior art analysis.  See See *Parker v. Kimberly Clark*,

2012 U.S. Dist. Lexis 2565 (N.D. Il. 2012).



*Fig. 6*



Summer Escapes 15'X9'X42"

d.     '817 vs.  Tempo Round Pool  AND Accused Product

Photos of the Tempo round pool shown below are part of the case record.

(A563.)  Also Sofpool provided a Statement of Undisputed Facts ("SUF") which

provided a comparison of Tempo with the Accused Design and Patented Design in

table format.  (A460-462.) Due to its roundness, the Tempo pool arguably should

not even be included in this three-way prior art analysis.



Fig.  6





Summer Escapes 15'X9'X42"

e.     '817 vs. FIG. 6 of U.S. Patent No. 1,961,061
       (McCulloch) AND Accused Product.

A true and correct copy of the '061 McCullogh patent is attached as part of

the appendix. (A566). Also Sofpool provided a Statement of Undisputed Facts

("SUF") which provided a comparison of McCulloch with the Accused Design and

Patented Design in table format. (A462-463.) McCulloch showed a round design and a bathtub design, neither of which have an overall appearance similar to the Patented Design or Accused Design.



Fig. 6





Summer Escapes 15"X9"X42"



       f.        *'817 vs. U.S. Patent No. 6,571,405 (Saputo et. al) AND Accused Product.*

A true and correct copy of the '405 Saputo patent is attached as part of the appendix. (A572). Also Sofpool provided a Statement of Undisputed Facts ("SUF") which provided a comparison of '405 Saputo with the Accused Design and Patented Design in table format.  (A462-463.) Saputo, a round pool, is not even close.



*Fig. 6*

Summer Escapes 15'X9'X42"

       g.        *'817 vs. of U.S. Patent No. 5,884,347 (Yurchison et al.) Figs. 1 and 2 AND Accused Product.*

A true and correct copy of the '347 Yurchison patent is attached as part of the appendix. (A646.) Also Sofpool provided a Statement of Undisputed Facts ("SUF") which provided a comparison of '347 Yurchison with the Accused Design

and Patented Design in table format. (A462-463.) Yurchison shows an older oval

rigid-wall above-ground pool design; but other than being oval-shaped, does not

share the same overall appearance as the Patented Design and Accused Design.



*Fig. 6*





Summer Escapes 15"X9"X42"

        *h.*      *'817 vs. U.S. Patent No. 6,389,616 (Mussa) AND Accused Product.*

A true and correct copy of the '616 Mussa patent is attached as part of the

appendix. (A582.) Also Sofpool provided a Statement of Undisputed Facts ("SUF")

which provided a comparison of '616 Mussa with the Accused Design and Patented

Design in table format. ( A462-463.) Mussa is a square-shaped pool and by that fact

alone does not possess the overall appearance of the Patented and Accused Designs.



*Fig. 6*




Summer Escapes 15'X9'X42"

    *i.*    *'817 vs. U.S. Patent No. 3,793,651 (Pitti) AND Accused Product.*

A true and correct copy of the '651 Pitti patent is attached as part of the appendix. (A591.) Also Sofpool provided a Statement of Undisputed Facts ("SUF") which provided a comparison of '651 Pitti with the Accused Design and Patented Design in table format.  (A464-465.) Pitti shows an older oval rigid-wall above-ground pool design; but other than being oval-shaped, does not share the same overall appearance as the Patented Design and Accused Design.



*Fig. 6*



Summer Escapes 15"X9"X42"

      *j.*      *'817 vs. U.S. Patent No. 3,409,916 (Billig et al) AND Accused Product.*

    A true and correct copy of the '916 Billig patent is attached as part of the appendix. (A602.) Also Sofpool provided a Statement of Undisputed Facts ("SUF") which provided a comparison of '916 Billig with the Accused Design and Patented Design in table format. (A463-464.) Billig shows an older oval rigid-wall above-ground pool design; but other than being oval-shaped, does not share the same overall appearance as the Patented Design and Accused Design.



*Fig. 6*

Summer Escapes 15"X9"X42"

> k.   *Accused Product vs. U.S. Patent No. 3,466,676 (Barrera et al.) AND Accused Product.*

A true and correct copy of the '676 Barrera patent is attached as part of the appendix. (A609.) Also Sofpool provided a Statement of Undisputed Facts ("SUF") which provided a comparison of '676 Barrera with the Accused Design and Patented Design in table format.  (A463-464.) Barrera shows an older oval rigid-wall above-ground pool design; but other than being oval-shaped, does not share the same overall appearance as the Patented Design and Accused Design.



*Fig. 6*



Summer Escapes 15'X9'X42"

> l.    *Accused Product vs. U.S. Patent No. 3,530,512 (McBride et al.) AND Accused Product.*

A true and correct copy of the '512 McBride patent is attached as part of the appendix. (A621.) Also Sofpool provided a Statement of Undisputed Facts ("SUF") which provided a comparison of '512 McBride with the Accused Design and Patented Design in table format.  (A463-464.) McBride shows an older odd-shaped rigid-wall above-ground pool design; McBride really shares nothing in common, in terms of overall appearance with the Patented Design and Accused Design.



Fig. 6





Summer Escapes 15'X9'X42"

      *m.*    *Accused Product vs. U.S. Patent No. 4,413,361 (Wolf et al.) AND Accused Product.*

      A true and correct copy of the '361 Wolf patent is attached as part of the appendix. (A633.) Also Sofpool provided a Statement of Undisputed Facts ("SUF") which provided a comparison of '361 Wolf with the Accused Design and Patented Design in table format. (A463-464.) Wolf shows an older oval rigid-wall above-ground pool design; but other than being oval-shaped, does not share the same overall appearance as the Patented Design and Accused Design.



*Fig. 6*




    n.    *Accused Product vs. U.S. Design Patent No. D427,693 (Mussa) AND Accused Product.*

A true and correct copy of the '293 Mussa patent is attached as part of the appendix. (A652). Also Sofpool provided a Statement of Undisputed Facts ("SUF") which provided a comparison of '293 Mussa with the Accused Design and Patented Design in table format. (A464-465.) Mussa is a square-shaped pool and by that fact alone does not possess the overall appearance of the Patented and Accused Designs.





   *o. Accused Product vs. U.S. Design Patent No. D420,145*
     *(Mussa) AND Accused Product.*

  A true and correct copy of the '145 Mussa patent is attached as part of the

appendix. (A663). Also Sofpool provided a Statement of Undisputed Facts

("SUF") which provided a comparison of '145 Mussa with the Accused Design

and Patented Design in table format. (A464-465.) Mussa is a square-shaped pool

and by that fact alone does not possess the overall appearance of the Patented and

Accused Designs.



Fig. 8

Summer Escapes 15'X9'X42"

### 5)    The 3- Way Comparison Demonstrates Infringement by a Preponderance

The 3-way comparison of the '817 Patented Design with similar views of the

Accused Design pool and prior art as a matter of law show substantial similarity

under the ordinary observer test.  It cannot be disputed that the head-to-head

comparisons of the '817 design against the Accused Product and the known prior

art shows that the Accused Product is much more similar to the '817 design than

the Accused Product is to the known prior art.  The closest design was the Rho

patent (A543-549.), which, as shown previously, was seriously lacking in several overall effects that are endemic to the Patented Design. (No oval top tube having a round cross section; no overlapping top tube; no panels; no contoured seams; no gently sloped/angled sides; no bulges; no shadow effect). However, the Accused Product incorporated all of these ornamental effects, which combine to form an overall appearance substantially similar to the Patented Design.

As a matter of law, if the Accused Design has copied a particular feature of the Patented Design that departs conspicuously from the prior art, the accused design is naturally more **likely** to be regarded as deceptively similar to the claimed design, and thus infringing. *Egyptian Goddess*, at 677. Here, the Accused Design has copied the novel overall effects of the '817 design, which depart from the prior art, and therefore, the undisputed facts show that the preponderance standard has been easily met in this case. (See Section II(D)(1-6) above). Hence, all the undisputed facts add up to a showing of infringement of the '817 Design under the ordinary observer test, by KMBL.

## CONCLUSION

This Court should reverse the judgment of the District Court and remand with instructions to enter a judgment of infringement of the '817 Patent by KMBL, in favor or Sofpool; this Court should issue further instructions to the District Court to vacate the judgment of non-infringement entered against Sofpool

presently in favor of KMBL. Alternatively, the Court should vacate the grant of

summary judgment currently in favor of KMBL and remand with instructions to

conduct further proceedings.

Respectfully submitted,

DATED:  August 26, 2013          By:_____/s/ John P. Costello_____
                                 JOHN P. COSTELLO
                                 COSTELLO LAW CORPORATION
                                 331 J STREET, SUITE  200
                                 SACRAMENTO, CA 95814
                                 (916) 441-2234

                                 *Attorney for Plaintiff-Appellant*
                                    *Sofpool LLC*

## TABLE OF CONTENTS
### Addendum to Brief

**Judgment in a Civil Case**
        **filed June 12, 2013** ................................................................ Add. 1

**Order of**
**The Honorable Lawrence K. Karlton**
**Denying Plaintiff's Motion for Summary Judgment; Granting**
**Defendant's Motion for Summary Judgment on Non-Infringement,**
**With Exhibit,**
        **filed May 30, 2013** ............................................................. Add. 2

        **Exhibit:**

        **US Patent No. D480,814 S**
                **dated October 14, 2003** .......................................... Add. 15

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

**JUDGMENT IN A CIVIL CASE**

**SOFPOOL, LLC,**

CASE NO: **2:10−CV−03333−LKK−JFM**

v.

**KMART CORPORATION, ET AL.,**

_____

<u>XX</u> — **Decision by the Court.** This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS ORDERED AND ADJUDGED

    **THAT JUDGMENT IS HEREBY ENTERED IN ACCORDANCE WITH THE COURT'S ORDER FILED ON 5/30/13**

**Marianne Matherly**
Clerk of Court

ENTERED:  **June 12, 2013**

by: _/s/  L. Mena−Sanchez_____
               Deputy Clerk

Add. 1

1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

10  SOFPOOL LLC, a Limited
    Liability Company,

11                                      NO. CIV. S-10-3333 LKK/JFM

12          Plaintiff,

13      v.

14  KMART CORPORATION, a
    Michigan Corporation, and
15  BIG LOTS, INC., an Ohio               O R D E R
    Corporation,
16

17          Defendants.

18  _____/

19  I.   **BACKGROUND**

20       In its First Amended Complaint, plaintiff Sofpool, LLC,

21  alleges that defendants Kmart Corp. and Big Lot Stores, Inc.,

22  infringed its design patent for an oval, above-ground swimming

23  pool, U.S. Patent No. D480,817 S (the '817 claimed patent), by

24  selling their own "Summer Escapes" pool.  Plaintiff has now moved

25  for summary judgment on the infringement claim.  Defendants have

26  cross-moved for summary judgment, asserting that they have not

1

1  infringed the patent, and that in any event, the patent itself is

2  invalid because it was "obvious" in light of the prior art.  See 35

3  U.S.C. § 103 ("non-obvious subject matter").[1]

4       For the reasons that follow, the court finds that the accused

5  pool does not infringe the '817 claimed patent.    Accordingly

6  summary judgment will be granted to defendants.

7  **1.    STANDARDS**

8       **a.    Infringement.**

9       A design patent is infringed if "the patented design, or any

10  colorable imitation thereof," is applied to "any article of

11  manufacture for the purpose of sale."  35 U.S.C. § 289.  Thus, "a

12  design patent is infringed by the 'unauthorized manufacture, use,

13  or sale of the article embodying the patented design or any

14  colorable imitation thereof.'"  <u>Arminak and Associates, Inc. v.</u>

15  <u>Saint-Gobain Calmar, Inc.</u>, 501 F.3d 1314, 1319 (Fed. Cir. 2007),

16  <u>cert. denied</u>, 553 U.S. 1102 (2008), <u>quoting</u> <u>Goodyear Tire & Rubber</u>

17  <u>Co. v. Hercules Tire & Rubber Co.</u>, 162 F.3d 1113, 1116-17 (Fed.

18  Cir. 1998).[2]

19

20       [1] "A patent for a claimed invention may not be obtained ...
    if the differences between the claimed invention and the prior art
21  are such that the claimed invention as a whole would have been
    obvious . . . to a person having ordinary skill in the art to which
22  the claimed invention pertains."  35 U.S.C. § 103.  "Design
    patents, like utility patents, must meet the nonobviousness
23  requirement of 35 U.S.C. § 103."  <u>Titan Tire Corp. v. Case New</u>
    <u>Holland, Inc.</u>, 566 F.3d 1372, 1384-85 (Fed. Cir. 2009).
24
         [2] The statute's use of the term "colorable imitation"
25  recognizes that "minor changes in a design are often readily made
    without changing its overall appearance."  <u>Goodyear</u>, 162 F.3d at
26  1117.

2
**Add. 3**

1       Of course, the claimed design does not cover the universe of
2   designs that remotely resemble it.  Rather, as an initial matter,
3   a design patentee limits the scope of his patent by including
4   ornamental features that give the overall design a distinctive
5   ornamental appearance.  See Elmer v. ICC Fabricating, Inc., 67 F.3d
6   1571, 1577 (Fed. Cir. 1995) (patentee included in its drawings
7   certain features that gave the design "a distinct ornamental
8   appearance," and "thus effectively limited the scope of its patent
9   claim by including those features in it").  Thus, the initial step
10  in any comparison of designs is a determination of whether the
11  accused design is even within the limitation on scope that the
12  patentee has imposed, through his patent drawings.

13      If the patentee's limitations on his patent do not plainly
14  exclude the accused design, however, the infringement inquiry then
15  requires the fact-finder to compare the whole of the claimed design
16  "to the design of the accused device."  OddzOn Products, Inc. V.
17  Just Toys, Inc., 122 F.3d 1396, 1404 (Fed. Cir. 1997).  The
18  comparison "requires the fact-finder to determine whether the
19  patented design as a whole is substantially similar in appearance"
20  to the accused design.  Id., at 1405 (emphasis added).

21      In making this comparison, the fact-finder puts itself into
22  the place of an "ordinary observer."  Egyptian Goddess, Inc. V.
23  Swisa, Inc., 543 F.3d 665, 687 (Fed. Cir. 2008) (en banc), cert.
24  denied, 556 U.S. ___, 129 S. Ct. 1917 (2009).  The "ordinary
25  observer" is not an expert; he is an observer "of ordinary
26  acuteness, bringing to the examination of the article upon which

1 the design has been placed that degree of observation which men of

2 ordinary intelligence give." <u>Gorham Mfg. Co. V. White</u>, 81 U.S. 511,

3 528 (1871); <u>Arminak</u>, 501 F.3d at 1324 (the "ordinary observer" is

4 the purchaser of the item displaying the claimed design).  However,

5 he must not be too ordinary; rather he must be "familiar with the

6 prior art designs." <u>Richardson v. Stanley Works, Inc.</u>, 597 F.3d

7 1288, 1295 (Fed. Cir. 2010).

8     The designs are "substantially similar" if, viewing the

9 overall appearance of the designs, an "ordinary observer"

10        would be deceived by the similarity between the claimed
         and accused bowls, "inducing him to purchase one
11       supposing it to be the other."

12 <u>Egyptian Goddess</u>, 543 F.3d at 683, <u>quoting</u> <u>Gorham</u>, 81 U.S. at 528

13 ;[3] <u>OddzOn Products</u>, 122 F.3d at 1405 ("There can be no infringement

14 based on the similarity of specific features if the overall

15 appearance of the designs are dissimilar"); <u>Richardson</u>, 597 F.3d at

16 1295 ("ordinary observer" test).[4]

17 ───────────────────

18        [3] <u>Egyptian Goddess</u> is the key authority in determining
   infringement of a design patent.  It appears to be the last <u>en banc</u>
19 decision of the Federal Circuit on the topic, and discusses the
   pertinent issues at length.

20        [4] Before the decision in <u>Egyptian Goddess</u>, the courts used the
   "point of novelty" test, in addition to the "ordinary observer"
21 test.  Under the "point of novelty" test, "'no matter how similar
   two items look, "the accused device must appropriate the novelty
22 in the patented device which distinguishes it from the prior
   art."'" <u>Egyptian Goddess, Inc. v. Swisa, Inc.</u>, 498 F.3d 1354, 1357
23 (Fed. Cir. 2007), <u>overruled</u>, 543 F.3d 665 (2008) ( <u>en banc</u>).  In
   other words, the court first identified a "point of novelty" that
24 distinguished the claimed design from the prior art.  If that
   "point of novelty" was not present in the accused design, then
25 there could be no infringement.

26        The <u>en banc</u> court in <u>Egyptian Goddess</u> expressly did away with

4

Add. 5

1    Since the ordinary observer is familiar with the prior art,

2 the fact-finder will be called upon to consider the prior art in

3 any comparison between designs:

4    In some instances, the claimed design and the accused
     design will be sufficiently distinct that it will be

5    clear without more that the patentee has not met its
     burden of proving the two designs would appear

6    "substantially the same" to the ordinary observer, as
     required by Gorham.  In other instances, when the claimed

7    and accused designs are not plainly dissimilar,
     resolution of the question whether the ordinary observer

8    would consider the two designs to be substantially the
     same will benefit from a comparison of the claimed and

9    accused designs with the prior art, as in many of the
     cases discussed above and in the case at bar.  Where

10   there are many examples of similar prior art designs ...
     differences between the claimed and accused designs that

11   might not be noticeable in the abstract can become
     significant to the hypothetical ordinary observer who is

12   conversant with the prior art.

13 Egyptian Goddess, 543 F.3d at 678.

14    **B.    Invalidity – "Obviousness."**

15    A patent is presumed to be valid.  35 U.S.C. § 282(a); Aero

16 Products Intern., Inc. v. Intex Recreation Corp., 466 F.3d 1000,

17 1015 (Fed. Cir. 2006).  Defendants, who assert that the '817 patent

18 is invalid for obviousness, bear the burden of proving its

19 invalidity.  Id.; Creative Compounds, LLC v. Starmark Laboratories,

20 651 F.3d 1303, 1310 (Fed. Cir. 2011).  The standard of proof

21 defendants must meet is "clear and convincing evidence."  Microsoft

22 _____

23 the "point of novelty" test.  Egyptian Goddess, 543 F.3d at 678

24 ("we hold that the 'point of novelty' test should no longer be used
   in the analysis of a claim of design patent infringement"); Hall

25 v. Bed Bath & Beyond, Inc., 705 F.3d 1357, 1363 (Fed. Cir. 2013)
   ("infringement of a design patent is based on the design as a

26 whole, not on any 'points of novelty'").

1  Corp. v. i4i Ltd. Partnership, 564 U.S. ___, 131 S. Ct. 2238, 2242

2  (2011).

3      The Federal Circuit recently addressed how a party would go

4  about challenging a design patent on obviousness grounds:

5          In addressing a claim of obviousness in a design patent,
           "the ultimate inquiry ... is whether the claimed design
6          would have been obvious to a designer of ordinary skill
           who designs articles of the type involved." Titan Tire,
7          566 F.3d at 1375, quoting Durling v. Spectrum Furniture
           Co., 101 F.3d 100, 103 (Fed. Cir. 1996). To determine
8          whether "one of ordinary skill would have combined
           teachings of the prior art to create the same overall
9          visual appearance as the claimed design," id. at 1381,
           the finder of fact must employ a two-step process.
10         First, "one must find a single reference, 'a something in
           existence, the design characteristics of which are
11         basically the same as the claimed design.'" Durling, 101
           F.3d at 103, quoting In re Rosen, 673 F.2d 388, 391 (CCPA
12         1982). Second, "other references may be used to modify
           [the primary reference] to create a design that has the
13         same overall visual appearance as the claimed design."
           Id. However, the "secondary references may only be used
14         to modify the primary reference if they are 'so related
           to the primary reference that the appearance of certain
15         ornamental features in one would suggest the application
           of those features to the other.'" Id., quoting In re
16         Borden, 90 F.3d 1570, 1575 (Fed. Cir. 1996).

17 Apple, Inc. v. Samsung Electronics Co., Ltd., 678 F.3d 1314,

18 1329-30 (Fed. Cir. 2012); see also Crocs, Inc. v. ITC, 598 F.3d

19 1294, 1308 (Fed. Cir. 2010) ("Obviousness is a question of law

20 based on underlying factual inquiries including: (1) the scope and

21 content of the prior art; (2) the level of ordinary skill in the

22 art; (3) the differences between the prior art and the claimed

23 invention; and (4) the extent of any objective indicia of

24 non-obviousness").

25     C.  **Summary Judgment.**

26     Summary judgment is appropriate "if the movant shows that

6

Add. 7

1 there is no genuine dispute as to any material fact and the movant

2 is entitled to judgment as a matter of law."  Fed. R. Civ. P.

3 56(a); Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (it is the

4 movant's burden "to demonstrate that there is 'no genuine issue as

5 to any material fact' and that they are 'entitled to judgment as a

6 matter of law'"); Walls v. Central Contra Costa Transit Authority,

7 653 F.3d 963, 966 (9th Cir. 2011) (per curiam) (same).

8     Consequently, "[s]ummary judgment must be denied" if the court

9 "determines that a 'genuine dispute as to [a] material fact'

10 precludes immediate entry of judgment as a matter of law." Ortiz

11 v. Jordan, 562 U.S. ___, 131 S. Ct. 884, 891 (2011), quoting Fed.

12 R. Civ. P. 56(a); Comite de Jornaleros de Redondo Beach v. City of

13 Redondo Beach, 657 F.3d 936 (9th Cir. 2011) (en banc) (same), cert.

14 denied, 132 S. Ct. 1566 (2012).

15     Under summary judgment practice, the moving party bears the

16 initial responsibility of informing the district court of the basis

17 for its motion, and "citing to particular parts of the materials in

18 the record," Fed. R. Civ. P. 56(c)(1)(A), that show "that a fact

19 cannot be ... disputed."  Fed. R. Civ. P. 56(c)(1); Nursing Home

20 Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp.

21 Securities Litigation), 627 F.3d 376, 387 (9th Cir. 2010) ("The

22 moving party initially bears the burden of proving the absence of

23 a genuine issue of material fact"), citing Celotex v. Catrett, 477

24 U.S. 317, 323 (1986).

25     If the moving party meets its initial responsibility, the

26 burden then shifts to the non-moving party to establish the

1  existence of a genuine issue of material fact.  Matsushita Elec.

2  Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-86 (1986);

3  Oracle Corp., 627 F.3d at 387 (where the moving party meets its

4  burden, "the burden then shifts to the non-moving party to

5  designate specific facts demonstrating the existence of genuine

6  issues for trial").  In doing so, the non-moving party may not rely

7  upon the denials of its pleadings, but must tender evidence of

8  specific facts in the form of affidavits and/or other admissible

9  materials in support of its contention that the dispute exists.

10  Fed. R. Civ. P. 56(c)(1)(A).

11      "In evaluating the evidence to determine whether there is a

12  genuine issue of fact," the court draws "all reasonable inferences

13  supported by the evidence in favor of the non-moving party."

14  Walls, 653 F.3d at 966.  Because the court only considers

15  inferences "supported by the evidence," it is the non-moving

16  party's obligation to produce a factual predicate as a basis for

17  such inferences.  See Richards v. Nielsen Freight Lines, 810 F.2d

18  898, 902 (9th Cir. 1987).  The opposing party "must do more than

19  simply show that there is some metaphysical doubt as to the

20  material facts ....  Where the record taken as a whole could not

21  lead a rational trier of fact to find for the nonmoving party,

22  there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at

23  586-87 (citations omitted).

24  **2.   ANALYSIS**

25      **a.   Infringement.**

26      Plaintiff's claimed design is U.S. Design Patent No. D480,817

1 ("the '817 patent"), for an oval-shaped, above-ground swimming
2 pool. The claim reads as follows, in its entirety: "The design for
3 an above-ground swimming pool, as shown and described." Dkt. No
4 24, Exh. A.[5] The pertinent description consists of drawings. The
5 court has construed the patent as follows:

> The claimed design is an above-ground, oval-shaped pool
> with side-struts, and additional elements or features, as
> shown in the '817 patent drawings. Whatever functional
> role may be played by any element or feature of the pool
> depicted in the drawings is not a part of the claim, and
> should therefore be disregarded; but the design of those
> same elements or features is a part of the claim. The
> elements or features referred to include, but are not
> limited to the following as depicted in the drawings: the
> tubular top; side-struts; side-straps; angled and bulging
> side-walls; rounded, angled and bulging end walls; and
> segmented panel walls of varying widths, connected by
> seams, and creating a pattern as seen from above.

13 ECF No. 73 (claim construction). The patent drawings are attached
14 to this Order as Exhibit A.

15    As discussed above, the court's initial step is to determine
16 whether the accused design is even within the limitation on scope
17 that the patentee has imposed, through his patent drawings. At
18 first glance, the accused design appears to be within the scope
19 limitation of the claimed design. The claimed and accused designs,
20 are both for an oval, above-ground pool. Plaintiff's Statement of

---

[5] Plaintiff did not expressly limit the claim to the "ornamental" design. However, by law, the design patent only covers the ornamental aspects of the design, so its omission of that language appears to make no difference. See Richardson, 597 F.3d at 1293 ("The district court here properly factored out the functional aspects of Richardson's design as part of its claim construction. By definition, the patented design is for a multi-function tool that has several functional components, and we have made clear that a design patent, unlike a utility patent, limits protection to the ornamental design of the article").

1  Undisputed Facts ("PSUF") ¶ 5;[6] Defendant's Statement of Undisputed

2  Facts ("DSUF") ¶ 19.[7]   Both designs feature a tubular top.

3  Defendants' Statement of Undisputed Facts ("DSUP") (ECF No. 81-1)

4  ¶¶ 33-34.  Both designs feature side struts along their long sides,

5  stretching from just below the tubular top, to the ground. Id., ¶¶

6  21-22.  Both designs feature side straps that run underneath the

7  pool and connect the struts where the struts meet the ground. Id.,

8  ¶¶ 47-48.  Both designs have angled side walls with a curve or

9  bulge at the bottom, just before the structure meets the ground.

10  Id., ¶¶ 35-36.  Both designs contain segmented side walls.[8]  Id.,

11  ¶¶ 49-50.

12      However, one ornamental aspect of a design patent is the

13  proportions of the design.  See Lee v. Dayton-Hudson Corp., 838

14  F.2d 1186, 1188 (Fed. Cir. 1988) ("the district court correctly

15  viewed the design aspects of the accused devices: the wooden balls,

16  their polished finish and appearance, the proportions, the carving

17  on the handle, and all other ornamental characteristics") (emphasis

18  added).  The '817 patent claims a pool design that is approximately

19  seven (7) times longer than it is tall, in its 2-strut design. See

20  Complaint, Exh. A.  Accordingly, the patent claims a design for a

21  squat pool.  Indeed, the overall appearance of the claimed design

22

23      [6] ECF No. 82-1.

24      [7] ECF No. 81-1.

25      [8] The segments of the claimed design form a specific pattern
   when viewed from above.  The photographs of the accused design do
26  not make clear whether a similar pattern exists or not.

1  is of a squat, wading-type pool.

2      The accused pool, on the other hand, has a taller and more

3  elegant appearance.  See Plaintiff's Motion for Summary Judgment

4  ("PSJ") (ECF No. 77) at 35, Photographs B & E.  It does not give

5  the appearance of being squat.  Indeed, the accused design is less

6  than four (4) times longer (taking the length of the tubular top)

7  than it is tall, approximately, in its 2-strut design.  While both

8  designs may give the impression of being wading pools, the claimed

9  design gives the appearance of being a squat wading pool, even

10 possibly permitting a person or child to sit in it, whereas the

11 accused pool appears to be too tall for sitting.[9]

12     A design patent cannot, of course, claim every conceivable

13 shape and proportion that could arise from its basic design.  But

14 that would appear to be the point of permitting design patents in

15 the first place.  The patent protects the shape and proportion the

16 patentee chooses, but leaves other shapes and proportions to the

17 imagination of other designers.

18     The court must keep in mind that the ultimate goal of the

19 design patent is to prevent the "unauthorized manufacture, use, or

20 sale of the article embodying the patented design or any colorable

21
22        [9] The comparison is somewhat awkward because the court is
   comparing the black-and-white drawings of the claimed design
23 against the color photographs of the accused design.  However, the
   court is instructed to use the claimed drawings, not the commercial
24 embodiment of the claimed design.  See Sun Hill Industries, Inc.
   v. Easter Unlimited, Inc., 48 F.3d 1193, 1196 (Fed. Cir. 1995)
25 ("'The test for infringement is not whether the accused product is
   substantially similar to the patentee's commercial embodiment of
26 the claimed design'") (the "point of novelty" analysis of this case
   was overruled by Egyptian Goddess).

1  imitation thereof.  <u>See</u> 35 U.S.C. § 289 (emphasis added).  The

2  court believes that no reasonable juror could find that an ordinary

3  observer would conclude that the taller, more elegant accused pool

4  "embod[ies]" the squat pool plaintiff patented, "or any colorable

5  imitation thereof."[10]

6      **B.  Invalidity and Non-obviousness.**

7      Both defendants have moved for summary judgment on their

8  counterclaims that they did not infringe the patent, and that the

9  patent is invalid for obviousness.  The motions for summary

10 judgment based upon non-infringement will be granted for the

11 reasons stated above in Section III(A).

12     The motions for summary judgment based upon obviousness appear

13 to be based upon the premise that "if the design of the '817 Patent

14 is interpreted broadly enough to cover the Summer Escapes pool [the

15 accused design], then it would have been obvious to one skilled in

16 the art to combine earlier references to arrive at a single piece

17 of art that is substantially the same as what is claimed in the

18 '817 Patent."  Defendants' Motion for Summary Judgment ("DSJ")

19 at 34.[11]  Since the court has determined that the design of the '817

20 does not cover the accused design, this motion would appear to be

21

22     [10] The court is aware that in a case alleging infringement of
    a design patent, "it is often helpful to refer to any prior art
23  with which the ordinary observer would reasonably be familiar."
    <u>Revision Military, Inc. v. Balboa Mfg. Co.</u>, 700 F.3d 524, 527 (Fed.
24  Cir. 2012).  Here, because the accused design is not within the
    scope of the claimed design, there is no need to engage in a
25  discussion or analysis of the prior art.

26     [11] ECF No. 78-1.  The page numbering refers to the internal
    document page number, not the ECF page number.

1  moot.[12]

2  **IV.   CONCLUSION**

3      For the foregoing reasons, the court orders as follows:

4      1.   Plaintiff's motion for summary judgment (ECF No. 77), is
5  **DENIED**;

6      2.   Defendants' motion for summary judgment (ECF No. 78), is
7  **GRANTED** on the grounds of non-infringement, and their motion for
8  summary judgment on the grounds of obviousness is **DENIED** as moot;

9      3.   The Clerk is directed to enter judgment for defendant and
10 to close this case.

11     IT IS SO ORDERED.

12     DATED:   May 29, 2013.

13

14

15                    _____
                      LAWRENCE K. KARLTON
16                    SENIOR JUDGE
                      UNITED STATES DISTRICT COURT
17

18

19

20  ────────────────
21     [12]  As plaintiff points out, a jury in another case
specifically found that the '817 patent was not invalid for
22  obviousness.   See Sofpool v. Intex , Civ. No. 2:7-cv-97, ECF
No. 148, Question No. 4 (E.D. Tex. April 17, 2008).  However, that
23  verdict was vacated by the Federal Circuit, although on grounds not
apparently related to the non-obviousness finding.   Sofpool, LLC
24  v. Intex Recreation Corp., 328 Fed. Appx. 654, 654-655 (Fed.
Cir. 2009) ("Because the jury in the present case was instructed
25  based upon the point of novelty test eliminated by   Egyptian
Goddess, the judgment of the district court is vacated and the case
26  is remanded for reconsideration and further proceedings as
appropriate").



US00D480817S

(12) **United States Design Patent**    (10) Patent No.:    **US D480,817 S**

Carreau    (45) Date of Patent:    ＊＊ **Oct. 14, 2003**

(54) **ABOVE-GROUND SWIMMING POOL**

(76) Inventor: **Pierre R. Carreau,** 2336 Junction Ct., Rancho Cordova, CA (US) 95670

(\*\*) Term: **14 Years**

(21) Appl. No.: **29/159,714**

(22) Filed: **Apr. 26, 2002**

(51) LOC (7) Cl. ...................................... 25-03

(52) U.S. Cl. ........................................... D25/2

(58) Field of Search ................................ D25/2; 4/506, 4/488, 513

(56) **References Cited**

**U.S. PATENT DOCUMENTS**

D408,546 S * 4/1999 Carreau ........................ D25/2

\* cited by examiner

*Primary Examiner*—Doris Clark

(74) *Attorney, Agent, or Firm*—R. Michael West

(57) **CLAIM**

The design for an above-ground swimming pool, as shown and described.

**DESCRIPTION**

FIG. 1 is a left-front perspective of a first embodiment of an above-ground swimming pool, showing my new design;

FIG. 2 is an elevational view of one side, the other side elevational view being substantially identical, thereto;

FIG. 3 is a top plan view, thereof;

FIG. 4 is an elevational view of one end, the other end elevational view being substantially identical, thereto; and

FIG. 5 is a bottom plan view, thereof;

FIG. 6 is a left-front perspective of a second embodiment of an above-ground swimming pool;

FIG. 7 is an elevational view of one side, the other side elevational view being substantially identical, thereto;

FIG. 8 is a top plan view, thereof;

FIG. 9 is an elevational view of one end, the other end elevational view being substantially identical, thereto; and,

FIG. 10 is a bottom plan view, thereof; and,

FIG. 11 is a left-front perspective view of a third embodiment of an above-ground swimming pool, the broken lines illustrate that the intermediate straight panel and strut assemblies are indefinitely repetitive throughout the length of the above ground swimming pool.

**1 Claim, 4 Drawing Sheets**



**U.S. Patent**　　　Oct. 14, 2003　　Sheet 1 of 4　　　**US D480,817 S**



*Fig. 1*



*Fig. 2*



*Fig. 3*



*Fig. 4*

**U.S. Patent**      Oct. 14, 2003      Sheet 2 of 4      **US D480,817 S**



Fig. 5



Fig. 6



Fig. 7

Add. 17

**U.S. Patent**     Oct. 14, 2003     Sheet 3 of 4     **US D480,817 S**



Fig. 8

Fig. 9

Fig. 10

**Add. 18**

**U.S. Patent**    Oct. 14, 2003    Sheet 4 of 4    US D480,817 S



*Fig. 11*

Add. 19

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that, on this the 26th day of August, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered users:

> Paul L. Gale
> Siavash D. Rashtian
> TROUTMAN SANDERS LLP
> 5 Park Plaza
> Irvine, CA  92614
> (949) 622-2700
>
> *Counsel for Appellees*

I further certify that, upon acceptance and request from the Court, the required paper copies of the foregoing will be deposited with United Parcel Service for delivery to the Clerk, UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT, 717 Madison Place, N.W., Washington, D.C. 20439.

The necessary filing and service were performed in accordance with the instructions given to me by counsel in this case.

> /s/ Melissa A. Dockery
> Melissa A. Dockery
> GIBSON MOORE APPELLATE SERVICES
> 421 East Franklin Street, Suite 230
> Richmond, VA  23219

### **CERTIFICATE OF COMPLIANCE**
**With Type-Volume Limitation, Typeface Requirements,**
**And Type Style Requirements**

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

        this brief contains <u>11,674</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

        this brief has been prepared in a proportionally spaced typeface using <u>Microsoft Word</u> in <u>14 Times New Roman</u>.

August 26, 2013                <u>/s/ John P. Costello          </u>
                                        John P. Costello