No. 2013-1466

# United States Court of Appeals
# for the Federal Circuit

SOFPOOL LLC,

*Plaintiff-Appellant,*

vs.

KMART CORPORATION and BIG LOTS STORES, INC.,

*Defendants-Appellees.*

*Appeal from the United States District Court for the Eastern District of California in Case No. 10-CV-3333, Senior Judge Lawrence K. Karlton*

## DEFENDANT-APPELLEES' ANSWERING BRIEF

Paul L. Gale (SBN 065873)
Siavash Daniel Rashtian (SBN 228644)
TROUTMAN SANDERS LLP
5 Park Plaza, Suite 1400
Irvine, CA 92614-2545
Telephone: (949) 622-2700

*Attorneys for Defendants-Appellees*
*Kmart Corporation and Big Lots Stores, Inc.*

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

SOFPOOL LLC        v.  KMART CORPORATION

No. 2013-1466

## CERTIFICATE OF INTEREST

Counsel for Appellees Kmart Corporation and Big Lots Stores, Inc. certifies the following:

1.      The full name of every party represented by me is:

Kmart Corporation and Big Lots Stores, Inc.

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

Not applicable.

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

Kmart Corporation is a wholly owned subsidiary of Kmart Holding Corporation.  Kmart Holding Corporation is a wholly owned subsidiary of Sears Holdings Corporation.  Sears Holdings Corporation is a publicly traded company.

Big Lots Stores, Inc. is a wholly owned subsidiary of Big Lots, Inc., which is a publicly traded company.

4.      The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Paul L. Gale
Siavash Daniel Rashtian
Troutman Sanders LLP
5 Park Plaza, Suite 1400
Irvine, CA 92614

| | |
|---|---|
| October 10, 2013 | /s/ Paul L. Gale |
| Date | Signature of counsel |
| | Paul L. Gale |

21364814v1

## ABBREVIATIONS

| | |
|---|---|
| '817 Patent | U.S. Patent No. D480,817S |
| '546 Patent | U.S. Patent No. Des. 408,546 |
| Sofpool | Plaintiff-Appellant Sofpool LLC |
| Carreau | Pierre R. Carreau, patentee |
| Kmart | Defendant-Appellee Kmart Corporation |
| Big Lots | Defendant-Appellee Big Lots Stores, Inc. |
| Retailers | Defendant-Appellees Kmart and Big Lots |
| Summer Escapes pool | The 15' x 9' x 42" Summer Escapes Pool accused of infringement |
| Intex | Intex Recreation Corp. |
| The *Intex* case | *Sofpool LLC v. Intex Recreation Corp.* |
| Prior art references | Retailers have adopted the prior art shorthand references used in Sofpool's opening brief |
| Br. __ | Cited references to opening brief of Plaintiff-Appellant Sofpool (filed August 26, 2013) |
| A___ | Cited pages in Appendix |

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ......................................................... i

ABBREVIATIONS.......................................................................... ii

STATEMENT OF RELATED CASES ................................................ ix

COUNTER STATEMENT OF THE ISSUES...................................... 1

COUNTER STATEMENT OF THE CASE.......................................... 2

COUNTER STATEMENT OF THE FACTS......................................... 5

    A.    Sofpool's Discussion of Above-Ground Swimming Pool
Designs is Largely Unsupported by its References to the
Appendix ............................................................................ 6

    B.    The Accused Summer Escapes Pool ................................... 6

    C.    The Relevant Figures From the '817 Patent........................ 7

    D.    The Circumstances Surrounding the Development of the Design
of the '817 Patent Pool ...................................................... 7

    E.    Evidence from the *Intex* Case is Irrelevant to This Lawsuit ............... 9

    F.    Sofpool's Contention Regarding Shadows is Contrary to the
Evidence ............................................................................ 9

SUMMARY OF ARGUMENT ......................................................... 10

ARGUMENT ................................................................................ 12

    A.    The Proportions of the '817 Patent Design are Vastly Different
From the Summer Escapes Pool, Such That the Summer
Escapes Pool's Design is not Within the Scope of the '817
Patent .............................................................................. 12

        1.    Proportions are a Major Design Element................................ 13

        2.    The Summer Escapes Pool is Proportionally Much
Taller, and the Length is Proportionally Much Shorter,
Than the '817 Patent Pool...................................... 15

**TABLE OF CONTENTS**
**(continued)**

Page

B.  The Proportions of the '817 Patent are Sufficiently Distinct From the Summer Escapes Pool, Such That an Ordinary Observer Would not be Deceived Into Believing the Summer Escapes Pool was Substantially the Same as the '817 Patent Pool ................................................................................. 18

C.  The District Court did not Find the Ornamental Design of the '817 Patent Pool to be Substantially the Same as the Summer Escapes Pool ..................................................................... 20

D.  The Overall Ornamental Designs of the '817 Patent Pool and the Summer Escapes Pool are not Substantially the Same .............. 22

   1.  While the Existence of Struts is Functional, the Ornamental Aspects of the Struts Result in an Overall Dissimilar Ornamental Appearance ........................................ 28

      a.  The Ornamental Shape of the Struts is Dissimilar ....... 29

      b.  The Ornamental Angle of the Struts is Dissimilar ....... 30

   2.  While the Existence of Straps is Functional, the Ornamental Aspects of the Straps are Dissimilar ................... 32

   3.  The Existence of the Outward Bulging End Walls is Functional, but Their Ornamental Shapes are Dissimilar ....... 34

   4.  The Existence of the Top Collar is Functional, but the Ornamental Aspects of the Top Collars are Dissimilar .......... 36

   5.  The Ornamental Designs of the Side Walls are Dissimilar .... 37

   6.  The Ornamental Shape at the Edges of the End Walls in the Summer Escapes Pool are Opposite Those of the '817 Patent Pool ................................................................ 38

   7.  There are Numerous Other Ornamental Dissimilarities Between the Designs of the '817 Patent Pool and the Summer Escapes Pool ........................................................ 41

E.  The General Configuration of the '817 Patent is Functional ............ 41

F.  The District Court was not Confused ................................................ 48

# TABLE OF CONTENTS
## (continued)

Page

G. The Hallmark of Sofpool's Opening Brief is its Reliance on Irrelevant Issues .................................................................. 51

    1. Professor Visser's Prior Testimony Regarding a Different Pool Given in a Different Lawsuit is Irrelevant ...................... 51

    2. Sofpool's Commercial Pools are Irrelevant and not Part of the Record .......................................................................... 54

    3. Jury Instructions From a Different Case are Irrelevant .......... 58

H. The District Court was not Required to Compare the Prior Art ....... 59

I. The Prior Art Further Supports a Finding of Non-Infringement ....... 60

    1. Prior Art Struts ......................................................................... 62

    2. Prior Art End Walls .................................................................. 64

    3. Prior Art Side Walls ................................................................. 65

    4. Prior Art Straps ........................................................................ 66

    5. Prior Art Top Collars ............................................................... 67

    6. Prior Art Oval Pools ................................................................ 68

CONCLUSION .................................................................................. 69

CERTIFICATE OF SERVICE ............................................................ 70

CERTIFICATE OF COMPLIANCE .................................................... 71

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Apple, Inc. v. Samsung Elecs. Co.,* No. 11-CV-1846, 2011 U.S. Dist. LEXIS
    139049 (N.D. Cal. Dec. 2, 2011) ...................................................................... 24

*Arminak & Assocs. v. Saint-Gobain Calmar, Inc.*,
    501 F.3d 1314 (Fed. Cir. 2007)........................................................................... 61

*Bush Indus., Inc. v. O'Sullivan Indus., Inc.*,
    772 F. Supp. 1442 (D. Del. 1991)................................................................ 12, 13

*Competitive Edge, Inc. v. Staples, Inc.*,
    763 F. Supp. 2d 997 (N.D. Ill. 2010), *aff'd without opinion*, 412 Fed.
    App'x 304 (Fed. Cir. 2011)......................................................................... *passim*

*Cornucopia Prods., LLC v. Dyson, Inc.*,
    No. CV 12-00234, 2012 U.S. Dist. LEXIS 104750 (D. Ariz. July 27,
    2012) .................................................................................................................. 14

*Creative Compounds, LLC v. Starmark Labs.*,
    651 F. 3d 1303 (Fed. Cir. 2011)......................................................................... 18

*Crocs, Inc. v. Int'l Trade Comm'n*,
    598 F.3d 1294 (Fed. Cir. 2010)..................................................................... 22, 26

*Ellison v. Shell Oil Co.*,
    882 F.2d 349 (9th Cir. 1989) ............................................................................. 49

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
    543 F.3d 665 (Fed. Cir. 2008).................................................................... *passim*

*Galen Med. Assocs. v. United States*,
    369 F.3d 1324 (Fed. Cir. 2004)......................................................................... 48

*Golden Bridge Tech., Inc. v. Nokia, Inc.*,
    527 F.3d 1318 (Fed. Cir. 2008)......................................................................... 43

21364814v1

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co.*,
    162 F.3d 1113 (Fed. Cir. 1995)................................................................. 25, 61

*Gorham Co. v. White*,
    81 U.S. 511 (1872).......................................................................................... 22

*Hoop v. Hoop*,
    279 F.3d 1004 (Fed. Cir. 2002)..................................................................... 14

*Hutzler Mfg. Co., Inc. v. Bradshaw Int'l, Inc.*,
    No. 11 Civ. 7211, 2012 U.S. Dist. Lexis 103864 (S.D.N.Y. July 25,
    2012) ................................................................................................... 14, 22, 24

*In re Mann*,
    861 F.2d 1581 (Fed. Cir. 1998)..................................................................... 15

*L.A. Gear v. Thom McAn Shoe Co.*,
    988 F.2d 1117 (Fed. Cir. 1993)..................................................................... 24

*Lee v. Dayton-Hudson Corp.*,
    838 F.2d 1186 (Fed. Cir. 1988)................................................................ 13, 56

*Litton Systems, Inc. v. Whirlpool Corp.*,
    728 F.2d 1423 (Fed. Cir. 1984)..................................................................... 54

*Nat'l Presto Indus., Inc. v. Dazey Corp.*,
    No. 90C 6614, 1990 U.S. Dist. LEXIS 17760 (N.D. Ill. Nov. 19, 1990).......... 13

*OddzOn Prods. Inc. v. Just Toys, Inc.*,
    122 F.3d 1396 (Fed. Cir. 1997)............................................................ 25, 42, 53

*Oscar Mayer Foods Corp. v. Sara Lee Corp.*,
    No. 90-C-43-C, 1990 U.S. Dist. LEXIS 10032 (W.D. Wis. Mar. 20,
    1990) ............................................................................................................. 13

*Payless Shoesource, Inc. v. Reebok Int'l, Ltd.*,
    998 F.2d 985 (Fed. Cir. 1993).......................................................................... 55

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Richardson v. Stanley Works, Inc.*,
610 F. Supp. 2d 1046 (D. Ariz. 2009) ............................................................ 14

*Richardson v. Stanley Works, Inc.*,
597 F.3d 1288 (Fed. Cir. 2010) ....................................................... 14, 22, 26

*Singleton v. Wulff*,
428 U.S. 106 (1976) ........................................................................... 43

*Smith v. Whitman Saddle Co.*,
148 U.S. 674 (1893) ........................................................................... 61

*Sun Hill Indus., Inc. v. Easter Unlimited, Inc.*,
48 F.3d 1193 (Fed. Cir. 1995) ............................................................. 55

*United States v. Richardson*,
638 F.2d 1189 (9th Cir. 1980) ............................................................. 49

*United States v. Robinson*,
20 F.3d 1030 (9th Cir. 1994) ............................................................. 49

## OTHER AUTHORITIES

Fed. Cir. Rule 28(b) ............................................................................. 5

21364814v1

## STATEMENT OF RELATED CASES

There have been no appeals from the same civil action or lower court proceedings before this or any other appellate court.  Counsel for the Retailers is not aware of any cases pending in this or any other court that will directly affect or be directly affected by this Court's decision in the pending appeal.

## COUNTER STATEMENT OF THE ISSUES

Contrary to the myriad of legal issues and extended commentary in Sofpool's opening brief (Br. 1-3), all that is properly on appeal is whether the district court correctly entered judgment of non-infringement in the Retailers' favor.  Indeed, Sofpool's opening brief is highly unusual, in that the issues are framed by: (a) comments made by the district court during the give and take of oral argument, even though a detailed written opinion was filed after the matter was taken under submission; and (b) matters outside the summary judgment record.[1]

The Retailers submit that the discrete issues before this Court are:

Issue 1:  Did the district court properly grant summary judgment of non-infringement, where the proportions of the '817 Patent pool design are different from the Summer Escapes pool design, such that the Summer Escapes pool is not within the scope of the '817 Patent claim?

Issue 2:  Did the district court properly grant summary judgment of non-infringement, where the proportions of the '817 Patent pool design are different from the Summer Escapes pool design, such that an ordinary observer would not be deceived into believing the Summer Escapes pool design was substantially the same as the '817 Patent pool design?

---

[1] The Court will see that a number of the citations to the record are to oral argument (A1653-1704) and Sofpool's unsolicited submission of a letter attaching multiple exhibits after the district court took the matter under submission (A1592-1621).

Issue 3:  Did the district court properly grant summary judgment of non-infringement without examining the prior art, where the overall ornamental design of the '817 Patent pool is plainly dissimilar from the overall ornamental design of the Summer Escapes pool, such that an ordinary observer would not be deceived into believing that the Summer Escapes pool design was substantially the same as the '817 Patent pool design?

Issue 4:  Is summary judgment of non-infringement also proper where the overall ornamental design of the '817 Patent pool is plainly dissimilar from the overall ornamental design of the Summer Escapes pool, such that an ordinary observer, familiar with the prior art, would not be deceived into believing that the Summer Escapes pool design was substantially the same as the '817 Patent pool design?

## COUNTER STATEMENT OF THE CASE

The "Preliminary Statement" that is subsumed within Sofpool's "Statement of the Case" (Br. 4) is improperly argumentative, as well as largely inaccurate, unsupported, and filled with irrelevant issues.  At most, the only statements that are appropriate, or relevant, are that: (a) this matter is an appeal of the district court's finding of non-infringement following cross-motions for summary judgment; (b) the Retailers sold the accused Summer Escapes pool; and (c) the district court noted that the '817 Patent claimed a design that gave the appearance of a squat

"wading pool," while the accused Summer Escapes pool was a "taller and more elegant" design.  Since Sofpool goes well beyond what is appropriate for inclusion in a "Statement of the Case," the Retailers are compelled to address the many misstatements contained in that section.

Contrary to Sofpool's repeated characterizations, the district court did <u>not</u> acknowledge any similarity between the '817 Patent design and the Summer Escapes pool design.  Instead, the district court stated: "At first glance, the accused design appears to be within the scope limitation of the claimed design."  (A10)  In analyzing the two designs to determine whether the Summer Escapes pool was even within the scope of the claimed '817 Patent design, the district court noted that both designs contain certain elements, without any discussion as to whether those elements are functional and whether their ornamental designs were similar.  (A10-A11)  As discussed later, these general elements are, in fact, required for the pool to function.  Otherwise, the sides would not stay upright and retain the water within the pool.

The district court held that one ornamental aspect of a design patent is its proportions.  (A11)  It determined that the '817 Patent claims a pool design that is approximately seven times longer than it is tall, which results in the design looking like a "squat pool."  (*Id.*)  The district court determined that the Summer Escapes pool, on the other hand, has a taller and more elegant appearance, as it is less than

four times longer than it is tall. (A12) Ultimately, because the two pools had very different proportions, the district court ruled that the Summer Escapes pool was not within the scope of the design claimed in the '817 Patent, and therefore did not infringe. (A10-A13)

Because the district court ruled that the Summer Escapes pool was not within the '817 Patent's scope, the district court did not analyze whether the two designs were substantially the same, thus making reference to the prior art moot. Contrary to Sofpool's argument, a "three-way prior art analysis" is not always necessary, because the prior art is only relevant when two designs are not plainly dissimilar.

Sofpool's arguments regarding testimony given by the Retailers' expert in a different case, involving a different pool manufactured by a different defendant, are irrelevant, especially in light of the fact that the district court did not rely on the Retailers' expert in this case to find that no infringement occurred.

Further, the district court's order shows no confusion regarding the law or the facts. While Sofpool obsessively discusses statements made during oral argument, those statements are irrelevant and must be disregarded, because the district court subsequently issued a detailed written ruling expressing its findings. Significantly, and contrary to the entire thrust of Sofpool's brief, the district court's written order does not make any reference to *Competitive Edge, Inc. v. Staples,*

*Inc.*, 763 F. Supp. 2d 997 (N.D. Ill. 2010), *aff'd without opinion*, 412 Fed. App'x

304 (Fed. Cir. 2011).  (A2-A14)

## COUNTER STATEMENT OF THE FACTS

For the most part, Sofpool's 15 page "Statement of the Facts" section (Br. 7-

22) is inaccurate or wholly unsupported by the record.  In addition, rather than

attempting to present the facts fairly and objectively, Sofpool's presentation is

extremely slanted and argumentative.  By way of example, one of the headings is

entitled: "Defendants' Acts of Infringement."  (Br. 10)  Another is entitled: "The

District Court's Confusion."  (Br. 21)

As required by Federal Circuit Rule 28(b), the Retailers have endeavored to

limit their Counter Statement of the Facts only to areas where the Retailers

disagree with Sofpool's representation of the facts.  But due to Sofpool's extreme

overlap between fact and argument (particularly with respect to the completely

unrelated *Intex* case, the arguments regarding Sofpool's alleged commercial

embodiment of the '817 Patent pool, and the misrepresentation of the district

court's written opinion), the Retailers have opted to address many of the facts

relating to those issues in the Argument section of this brief.

## A.    Sofpool's Discussion of Above-Ground Swimming Pool Designs is Largely Unsupported by its References to the Appendix

Other than noting that the Tempo pool is a round-shaped above-ground pool, the first paragraph in Section A.1 (Br. 7) is completely unsupported by the referenced pages to the Appendix.  The next paragraph also is completely unsupported by the references cited, except that patentee Carreau used a round pool to design the oval pool claimed in the '817 Patent.  The next paragraph (last paragraph on Br. 8) again is wholly unsupported by the references cited, except for the reproduction of certain figures from the '817 Patent.

In sum, other than a picture or two, there is no evidence in the record supporting Sofpool's factual statements.


## B.    The Accused Summer Escapes Pool

The Summer Escapes pool at issue in this litigation is an oval above-ground soft-sided self-rising pool with two struts on each straight side. (A1110,A1113,A1280)  Below are photographs of the perspective, side, and end views of the Summer Escapes pool.[2]  (A1219,A1221,A1223)  Obviously, the Retailers deny that they engaged in any acts of infringement (Br. 10, heading 2).

---

[2] While Sofpool cites to a 12' x 20' x 42" iteration of the Summer Escapes pool, that iteration is not part of Sofpool's complaint.  (A33-A42)


*Perspective View*


*Side View*


*End View*

### C.    The Relevant Figures From the '817 Patent

Contrary to Sofpool's expansive reference to all of the figures disclosed in the '817 Patent, Figures 6-10, showing two struts on each straight side of the pool, disclose the relevant embodiments at issue in this appeal.  Figures 6, 7, and 9 below show the designs of the perspective, side, and end view of the '817 Patent, with two struts per side.  (A867-A868)



### D.    The Circumstances Surrounding the Development of the Design of the '817 Patent Pool

In 1999, four years before filing for the '817 Patent, patentee Carreau received a design patent for a round soft-sided self-rising pool–the '546 Patent. (A925-A933)  Soft-sided self-rising pools are made of flexible material, and have

- 7 -

walls that rise as the pool is filled with water.  (A1280)  The perspective view of

the '546 Patent is shown below.  (A926)



Fig. 1

After selling an above-ground, self-rising round pool, Carreau received

requests from dealers for an elongated pool, due to the fact that some customers

could not fit round pools into their backyards because of the size, but believed that

elongated pools could fit instead.  (A848-A849)  Carreau used a round pool

specimen depicted in the '546 Patent as the basis for designing the '817 Patent's

oval pool.  (A846-A847)  While Sofpool contends that "a significant amount of

cutting, shaping and forming of vinyl pool panels had to be done to revise the

shape to render the final oval '817 Patent swimming pool design" (Br. 8), that

contention is completely unsupported by the record.  Instead, Carreau testified that

the process was much simpler:

> I split a 17-foot center.  I made a few adjustments to be minus the
> center, and I put the–strap, piece of material across the pool, and I put
> a tube towards the top, and a leg–and that's how it was done–and
> voila.

(A846)

### E.    Evidence from the *Intex* Case is Irrelevant to This Lawsuit

As indicated above, in the Argument section of this brief, the Retailers will discuss Sofpool's contentions regarding the *Intex* case–an irrelevant lawsuit that involved a different product, different counsel, different defendants, and a different legal standard.  But at this juncture, the Retailers note that the comment at page 12 of Sofpool's brief about the reason for the settlement of the Intex case is wholly unsupported by the reference to the Appendix.  There is no evidence in the record as to why that case settled.

### F.    Sofpool's Contention Regarding Shadows is Contrary to the Evidence

Sofpool contends that one similarity between the '817 Patent pool and the Summer Escapes pool is the "shadow effect" caused by the overlapping top collar. (Br. 16-17)  That theory was debunked in the district court when the Retailers showed that the shadow was caused by the position of the sun.  (A1399-A1400) Sofpool's argument also was debunked by the hatching lines of the '817 Patent design, which show that it both bows inward just under its top collar, and in between its panel.  Consequently, each of the end panels has its own shadow. (A865-A869,A1114-A1116,A1136-A1137)  On the other hand, the Summer Escapes pool does not bow inward between seams and therefore does not have such a shadow.  (A1115-A1116,A1136-A1138)

21364814v1

The shadow in the picture Sofpool selected from the record (Br. 17) obviously is the result of the position of the sun. Set forth below is the same perspective view of the Summer Escapes pool without the shadow. (A1219)



## SUMMARY OF ARGUMENT

The district court properly granted summary judgment of non-infringement. Without needing any further evidence (although there was plenty from which to choose), the district court correctly ruled that the accused Summer Escapes pool design does not fall within the scope of the '817 Patent, based on its very different proportions. The Retailers proved, and the district court found, that the accused Summer Escapes pool is proportionally taller than the '817 Patent pool. When the two designs are scaled to the same height, the '817 Patent pool is 50% longer than the Summer Escapes pool. When the two designs are scaled to the same width according to their top collars, the Summer Escapes pool is 190% taller than the '817 Patent pool.

Sofpool cannot overcome the undisputed fact that the Summer Escapes pool is proportionally much taller height-wise, and much shorter length-wise, than the '817 Patent pool. As a result, it was not necessary for the district court to consider

the question of whether the Summer Escapes pool's overall ornamental design was substantially the same as the '817 Patent pool's design.

But even if the district court had ruled that the Summer Escapes pool fell within the '817 Patent's scope, summary judgment still would have been appropriate, because the proportions of the two designs are sufficiently distinct, such that an ordinary observer would not be deceived into purchasing the Summer Escapes pool believing it to be the '817 Patent pool.

Moreover, while proportions alone are sufficient to easily differentiate the two designs, there are many other ornamental aspects that contribute to, or directly result in, a plainly dissimilar overall ornamental appearance. The Summer Escapes pool is sufficiently distinct from the '817 Patent design on the additional basis that, when viewed collectively, the ornamental aspects of the struts, straps, bulging end walls, top collars, side walls, and seam pattern result in an overall dissimilar ornamental appearance. Collectively, the overall impression of these ornamental dissimilarities decimates Sofpool's claim for infringement.

The only similarity between the '817 Patent pool and the Summer Escapes pool is that both contain certain functional elements–struts, bulging end walls, straps, and an inflatable top collar–that are undisputedly required for the pool to work. While required for the pools to function, the overall ornamental aspects of these elements are dissimilar.

In addition, because the two designs are sufficiently distinct, reference to the prior art is unnecessary.  But if it were to be considered, the prior art would further support a finding of non-infringement.  That is because it would show that the ornamental design aspects of the '817 Patent do not depart conspicuously from the prior art, therefore making any such differences between the Summer Escapes pool and the '817 Patent design more pronounced.  Indeed, the '817 Patent is closer to the prior art than it is to the Summer Escapes pool.

Accordingly, because the evidence established that an ordinary observer, whether familiar with the prior art or not, would not be deceived into purchasing the Summer Escapes pool believing it to be the '817 Patent pool, summary judgment in the Retailers' favor was proper, and should be affirmed.

## ARGUMENT

### A.   The Proportions of the '817 Patent Design are Vastly Different From the Summer Escapes Pool, Such That the Summer Escapes Pool's Design is not Within the Scope of the '817 Patent

The district court properly granted summary judgment of non-infringement on the basis that the '817 Patent design has vastly different proportions than the Summer Escapes pool.  As the district court noted, "[t]he patent protects the shape and proportion the patentee chooses, but leaves other shapes and proportions to the imagination of the other designers."  (A12)  The district court correctly ruled that

21364814v1

due to the dissimilar proportions, the Summer Escapes pool was not within the scope of the '817 Patent.  (A13)

### 1.    Proportions are a Major Design Element

As the district court correctly observed, "one ornamental aspect of a design patent is the proportions of the design."  (A11)  This observation is in line with longstanding authority from this Circuit.  *Lee v. Dayton-Hudson Corp.*, 838 F.2d 1186, 1188 (Fed. Cir. 1988) ("[T]he district court correctly viewed the design aspects of the accused devices:  the wooden balls, their polished finish and appearance, *the proportions*, the carving on the handle, and all other ornamental characteristics…") (emphasis added).

Since then, district courts around the country consistently have followed *Lee*, and when applicable, relied on proportionality as a basis to determine infringement under the ordinary observer test.  *See Oscar Mayer Foods Corp. v. Sara Lee Corp.*, No. 90-C-43-C, 1990 U.S. Dist. LEXIS 10032, at *24 (W.D. Wis. Mar. 20, 1990) (comparing the proportions of defendants' meat and cheese lunch packaging with patented design); *Nat'l Presto Indus., Inc. v. Dazey Corp.*, No. 90C 6614,1990 U.S. Dist. LEXIS 17760, at *13 (N.D. Ill. Nov. 19, 1990) (comparing the proportions of the commercial embodiment of a patented bucket-shaped deep fryer design to the accused product and to the patent's drawings); *Bush Indus., Inc.*

*v. O'Sullivan Indus., Inc.*, 772 F. Supp. 1442, 1451 (D. Del. 1991) (comparing

entertainment center "setup" furniture and noting the "striking differences in their

proportions and dimensions"); *Richardson v. Stanley Works, Inc.*, 610 F. Supp. 2d

1046, 1052 n.1 (D. Ariz. 2009), *aff'd.*, 597 F.3d 1288 (Fed. Cir. 2010) (observing

that in Stanley's stepclaw design, the top side of the jaw is longer than the bottom,

whereas in Richardson's, both sides of the jaw are the same length); *Hutzler Mfg.*

*Co., Inc. v. Bradshaw Int'l, Inc.*, No. 11 Civ. 7211, 2012 U.S. Dist. Lexis 103864,

at *40, 42-43 (S.D.N.Y. July  25, 2012) (observing that the design claims of plastic

onion and garlic containers extend to the overall design, "including the shape and

proportions of the products" and finding that the accused products "have the same

shape…in the same proportions"); *Cornucopia Prods., LLC v. Dyson, Inc.*, No.

CV-12-0034, 2012 U.S. Dist. LEXIS 104750, at *23 (D. Ariz. July 27, 2012) ("the

proportions of the various components in relation to each other is ornamental").

*See also Hoop v. Hoop*, 279 F.3d 1004, 1008 (Fed. Cir. 2002) (affirming the

district court's entry of an injunction after comparing the accused design's

proportions and shapes with the patented design).

- 14 -

### 2. The Summer Escapes Pool is Proportionally Much Taller, and the Length is Proportionally Much Shorter, Than the '817 Patent Pool

A comparison of the relative dimensions of the Summer Escapes pool to the '817 Patent pool demonstrates the plain dissimilarity between the pools' designs. The Summer Escapes pool is proportionally taller than the '817 Patent pool, resulting in the Summer Escapes pool not being within the scope of the '817 Patent. When the Summer Escapes pool is scaled to be at the same height as the '817 Patent pool, the '817 Patent pool is approximately 50% longer than the Summer Escapes pool.[3] (A695-A696,A719-A720,A782-A783) The photo of the Summer Escapes pool shown below is accurately scaled when compared to the '817 Patent's figure. (A695-A696,A719-A720,A782-A783)



**Comparison at the Same Height**

*'817 Patent, Fig. 7*

*Summer Escapes*

---

[3] Sofpool appears to argue that the '817 Patent can "claim a certain range of proportions." (Br. 3.) This is incorrect, as "[d]esign patents have almost no scope. [They are] limited to what is shown in the application drawings." *In re Mann*, 861 F.2d 1581, 1582 (Fed. Cir. 1998).

21364814v1

When the two designs are scaled to the same height, and viewed from the top, almost two Summer Escapes pools can fit into the '817 Patent pool.  (A719)



*'817 Patent, Fig. 8* →                                    ← *Summer Escapes*

On the other hand, if the Summer Escapes pool was scaled to be the *same width* as the '817 Patent pool based on their top collars, then the Summer Escapes pool would be 190% taller than the '817 Patent pool.  If the two are scaled to be the same width according to their sidewalls, the Summer Escapes pool is 168% taller than the '817 Patent, as shown below.  (A708-710,A783-A784A1518-A1519)  The Summer Escapes pool, which normally has a height of 42 inches, would have walls that are approximately 70-80 inches tall in order to be the same width proportionally as the '817 Patent pool design.  (A783-A784,A1518-A1519)

Moreover, if the Summer Escapes pool remained at a height of 42 inches, and it was the '817 Patent pool that was proportionally scaled, then the '817 Patent pool would be only 25 inches tall.  Clearly, an ordinary observer indisputably would not be deceived into thinking that a pool that is 42 inches is the same as

- 16 -

either a pool that is 73 inches in height, or a pool that is only 25 inches tall.

(A1519-A1520)



**Comparison at the Same Width**

*'817 Patent, Fig. 9*                    *Summer Escapes*

In its order, the district court pointed to these different proportions as one of

the main reasons why the Summer Escapes pool was not within the scope of the

'817 Patent:

> The '817 patent claims a pool design that is approximately seven (7) times longer than it is tall, in its 2-strut design…  Accordingly, the patent claims a design for a squat pool.  Indeed, the overall ornamental appearance of the clamed design is of a squat, wading-type pool.  [¶]  The accused pool, on the other hand, has a taller and more elegant appearance…  It does not give the appearance of being squat.  Indeed, the accused design is less than four (4) times longer (taking the length of the tubular top) than it is tall, approximately… (A11-A12)

Therefore, the district court's own calculations demonstrate the plainly

dissimilar proportions between the design of the '817 Patent and the Summer

Escapes pool.

While Sofpool takes the district court to task for its reference to a "wading

pool" being "in contravention of the file history of the '817 Patent" (Br. 21),

Sofpool misses the point of the observation.  The reference was to the overall impression the '817 Patent pool design conveys when compared to the Summer Escapes pool design.  Notably, the patentee of the '817 Patent also believed that a taller looking pool was an important design feature.  (A862-A863,A1086-A1087) Moreover, the district clearly never analyzed the "functionality of a wading pool versus a swimming pool," as Sofpool erroneously contends.  (Br. 22)

> **B.**    **The Proportions of the '817 Patent are Sufficiently Distinct From the Summer Escapes Pool, Such That an Ordinary Observer Would not be Deceived Into Believing the Summer Escapes Pool was Substantially the Same as the '817 Patent Pool**

The burden is on Sofpool to prove infringement.  *Creative Compounds, LLC v. Starmark Labs.*, 651 F. 3d 1303, 1314 (Fed. Cir. 2011) (patentee bears the burden of proving infringement, and loses regardless of whether the accused comes forward with any evidence to the contrary).

The test for design patent infringement is the "ordinary observer" test. Under *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 680 (Fed. Cir. 2008), the ordinary observer test requires that "the scope of the claim must be construed in order to identify the non-functional [*i.e.*, ornamental] aspects of the design as shown in the patent."  In the next step, the inquiry is "whether an ordinary observer, familiar with the prior art…designs, would be deceived into believing the [accused design] is the same as the [patented design]."  *Id.* at 681.  However, in

performing this step, the prior art is not considered where two designs are plainly dissimilar, because two designs may be "sufficiently distinct that it will be clear without more that the patentee has not met its burden of proving the two designs would appear 'substantially the same' to the ordinary observer…." *Id.* at 678.

In granting summary judgment, the district court did not find it necessary to even reach the question of whether the overall ornamental design aspects of the Summer Escapes pool were substantially the same as those claimed in the '817 Patent. That is because the indisputably different proportions resulted in the Summer Escapes pool being outside the scope of the '817 Patent. (A10-A13)

But even if the district court had concluded that the Summer Escapes pool fell within the scope limitation of the '817 Patent, the Summer Escapes pool still would not have been found to be substantially the same as the '817 Patent pool, due to its distinct proportions. As a result, no reasonable fact-finder could have found that Sofpool met its burden of showing that an ordinary observer would have been deceived into purchasing the Summer Escapes pool believing it to the '817 Patent pool. *Egyptian Goddess*, 543 F.3d at 682. Indeed, if there is any one feature that encompasses the overall design of this class of products, it is the products' proportions.

### C.    The District Court did not Find the Ornamental Design of the '817 Patent Pool to be Substantially the Same as the Summer Escapes Pool

Repeatedly, Sofpool erroneously contends that the "District Court clearly stated that Sofpool had satisfied the first prong, that is Sofpool had established substantial similarity between the Accused Product and Patented Design." (Br. 24; *see also* Br. 22,26,39,42)  The district court, however, made no such statement. Instead, the district court merely stated, several steps removed from Sofpool's contention:  "*At first glance*, the accused design appears to within the scope limitation of the claimed design."  (A10) (emphasis added).

Whether a design is within the "scope" limitation of the patented design does not equate at all to similarity, let alone substantial similarity.  The district court obviously took care to note that its initial comment regarding scope limitation was "at first glance."  And after taking more than a "first glance" at the two designs, the district court ruled that the "the accused design is not within the scope of the claimed design" and that "no reasonable juror could find that an ordinary observer would conclude that the taller, more elegant accused pool 'embod[ies]' the squat pool plaintiff patented, 'or any colorable imitation thereof' [fn omitted]."  (A13)

For several reasons, the district court's rudimentary "first glance" is vastly different from conducting this Circuit's ordinary observer test.  First, the district

- 20 -

court was glancing at an '817 Patent pool drawing and a picture of the Summer Escapes pool which were only a few inches in size.  In taking a first glance on paper, the viewer may not appreciate the vastly different proportions of the two designs–unlike considering how it would be seen in person, where the different proportions of the full-sized pools would be obvious, even at a glance.  Second, at a glance, the viewer would not have time to consider only the ornamental aspects of the design, and would, no doubt, be factoring in (instead of out) the functional aspects as well.

Third, under *Egyptian Goddess*, the hypothetical ordinary observer would spend significantly more time than a "glance" in looking to purchase such a pool. The hypothetical ordinary observer here is a purchaser of soft-sided, self-rising, above-ground pools, who would carefully consider the price, design, size, shape, safety, and quality of a pool before buying it.  (A1106)  Soft-sided swimming pools are a significant investment, as they sell for hundreds or even thousands of dollars each.  (A1083-A1084,A1094-A1096)

The record evidence indisputably established that the '817 Patent pool was designed in response to various customers expressing the view that due to space constraints, an elongated pool would fit in their backyards better than a round pool. (A848-A849)  Because such customers have limited space, they undoubtedly would pay close attention to the pool's size and shape.  A pool that is too wide or

too long would both be important considerations.  Further, whether a pool has struts that splay significantly outward is important, as it would require additional ground space that may be unavailable.

Perhaps, most importantly, consumers would not allow their children to swim in an unsafe pool.  Sofpool clearly knows safety is important, as it has an entire page on its website on "Sofpool Safety."  (A1240)  Obviously, due to safety concerns, a parent will pay very close attention to every feature of the pool and not buy one without careful consideration.  Given the cost and safety concerns, an ordinary observer would pay attention to the quality as well.

Therefore, the purchase of a soft-sided oval pool is not a casual one, such as the purchase of a $2.99 plastic onion holder sold in markets that was at issue in *Hutzler Manufacturing Co.*, 2012 U.S. Dist. Lexis 103864, at *20-22.  Instead, a hypothetical ordinary observer's purchase of a soft-sided above-ground oval pool would be made with due consideration.

### D.    The Overall Ornamental Designs of the '817 Patent Pool and the Summer Escapes Pool are not Substantially the Same

Due to its conclusion regarding proportionality and scope, it was not necessary for the district court to analyze which elements of the '817 Patent are functional.  *Egyptian Goddess*, 543 F.3d at 680.  As a result, it also was not necessary for the district court to conduct the next step in the analysis, which is

"whether an ordinary observer, familiar with the prior art…designs, would be deceived into believing the [accused design] is the same as the [patented design]." *Id.* at 681. But if the district court had conducted such an analysis, and looked beyond proportions, the dissimilarities become more profound, and it becomes even more clear that the Summer Escapes pool is plainly dissimilar from the '817 Patent design.

As noted, the test for infringement requires that an ordinary observer be "*deceived*" into believing the accused design is the same as the patented design. *Egyptian Goddess*, 543 F.3d at 681. This test originated in *Gorham Co. v. White*, 81 U.S. 511, 528 (1872), where the Supreme Court concluded: "We hold, therefore, that if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to *deceive* such an observer, *inducing him to purchase one supposing it to be the other*, the first one patented is infringed by the other." (Emphasis added).

This Court has recited and applied this standard repeatedly. *See, e.g., Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1303 (Fed. Cir. 2010) ("To show infringement under the proper test, an ordinary observer, familiar with the prior art designs, *would be deceived* into believing that the accused product *is the same* as the patented design") (emphasis added); *Richardson*, 597 F.3d at 1295 (infringement occurs where "an ordinary observer would be *deceived* into thinking

that any of the [accused] designs *were the same* as [the] patented design")
(emphasis added).

Fundamentally, then, the very definition of what makes two designs
substantially the same is that the ordinary observer would be *deceived* into making
the purchase.  As a result, courts have sustained a finding of design patent
infringement only where there is a very high degree of similarity.  *Hutzler Mfg.
Co.,* 2012 U.S. Dist. Lexis 103864, at *33-34 (citing *Crocs* as an example:  "In one
[side-by-side] comparison after another, the shoes appear <u>nearly identical</u>"
(emphasis added)).  *See also, L.A. Gear v. Thom McAn Shoe Co.*, 988 F.2d 1117,
1125-26 (Fed. Cir. 1993) ("almost a direct copy"); *Apple, Inc. v. Samsung Elecs.
Co.,* No. 11-cv-1846, 2011 U.S. Dist. LEXIS 139049, *90-91 (N.D. Cal. Dec. 2,
2011) ("virtually indistinguishable").  As a result, courts repeatedly have
determined that no infringement occurs unless the products are the same, or
"nearly identical."

The following are examples of cases where the courts determined the
accused product did <u>*not*</u> infringe the design patent at issue:

- 24 -

| **Patented Designs** | **Accused Design** | |
|---|---|---|
|  |  | *Competitive Edge, Inc. v. Staples, Inc.,* 763 F. Supp. 2d 997 (N.D. Ill. 2010), *aff'd without opinion,* 412 Fed. App'x 304 (Fed. Cir. 2011) |
|  |  | *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396 (Fed. Cir. 1997) |
|  | | *Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co.*, 162 F.3d 1113 (Fed. Cir. 1995) |

Under *Egyptian Goddess*, individual elements must be analyzed in order to determine whether the patented design, accused product and/or the prior art have the same overall visual effect. In *Egyptian Goddess*, this Court observed that the district court "may find it helpful to point out, either for a jury or in the case of a bench trial by way of describing the court's own analysis, *various features of the claimed design* as they relate to the accused design and the prior art." 543 F.3d at 680 (emphasis added).

Thus, in determining whether the design of a fingernail buffer was infringed, this Court in *Egyptian Goddess* provided examples of individual features a court could properly consider under the ordinary observer test. This Court ultimately

ruled there was no infringement even though "the general shape of the accused nail buffer at issue…is the same as that of the patented buffer design." *Id.* at 680-681. *See also, Crocs*, 598 F.3d at 1304-1306 (analyzing infringement of a patented shoe design by conducting a side-by-side comparison of the patented design and accused product from different views); *Richardson*, 597 F.3d at 1295 (finding that the lower court properly took into consideration that the patented design of a tool featured a standard shaped hammer-head, a diamond-shaped flare near the crow-bar and the top of the jaw, teeth only on the bottom side of the jaw, a rounded neck, a crow-bar that faces the same direction as the hammer-head, and a plain, undecorated handle); *Competitive Edge, Inc.*, 763 F. Supp. 2d at 1011-1012 (granting summary judgment for defendants, finding no infringement of the design of a calculator, based on a side-by-side comparison of features such as scalloped edges versus smooth edges, hour-glass shape versus block-rectangular shape, inclusion of a removable name plate, indented circles on accused design's keys, and recessed display screen in patented design, because no reasonable jury could find plaintiff met its burden when considering all the distinctions together in the context of ornamental design).

Sofpool contends that the Retailers "took a strategy of arguing elements in isolation, without a view toward the overall designs." (Br. 30) In support of this argument, Sofpool cites to the expert witness report submitted by the Retailers'

expert, Professor Steven Visser (A1099-A1144), a tenured Full Professor in the

area of Industrial Design at Purdue University.  At the beginning of his report,

Professor Visser states:  "[I]t is most appropriate to compare the overall

ornamental design of the two-strut pool shown in Figures 6-10 with the accused

product."  (A1110)  Following that comment are the two pictures shown below:



Thus, Sofpool could not be more wrong in its assertions.  Instead, in line

with *Egyptian Goddess*, the Retailers pointed out the various ornamental design

differences between the '817 Patent pool and the Summer Escapes pool, to

demonstrate their overall dissimilar designs.  The Retailers repeatedly stressed that

the "overall" designs had to be dissimilar.  (*See, e.g.*, A784 ("The ornamental

aspects of the struts result in an overall dissimilar ornamental appearance"); A788

("dissimilar view of the straps contributes to an overall dissimilar appearance");

A791 ("dissimilar shapes of the end walls contribute to an overall sufficiently

distinct appearance").

And it must be remembered that the hypothetical ordinary observer is

looking at a 15' by 9' above-ground pool, where these differences are distinctly

noticeable.  Thus, when the ornamental design elements of both pools are considered in their totality, and appropriate weight is assigned to the more prominent elements of the designs, there can be no doubt that the designs are sufficiently distinct.

### 1.    While the Existence of Struts is Functional, the Ornamental Aspects of the Struts Result in an Overall Dissimilar Ornamental Appearance

Both the '817 Patent pool and the Summer Escapes pool have struts that are used to support their side walls.  The existence of these struts is functional.  (A842-A845,A855-A859,A1191-A1193,A988,A1281)  Patentee Carreau made clear that without the struts, the pool would not remain upright.  (A842-A845,A855-A859)

Moreover, for a soft-sided pool, the struts must provide longitudinal (length) and latitudinal (width) support to withstand the water pressure, which generally requires the use of a strut with horizontal and vertical bars.  (A1281)  Obviously, the strut must angle downward to work.  By contrast, a rigid above-ground pool structure (made of a hard substance like metal, wood, etc.) can use a simple angled bracket as support, because the rigid frame provides longitudinal support, but not lateral support.  (A1281)  As a result, because the existence of such struts is functional, any similarity caused merely because the '817 Patent pool and the

Summer Escapes pool both have struts, must be disregarded as part of any infringement analysis.

But despite the functional existence of struts, there still are various *ornamental* ways to design the struts, as the district court noted in its *Markman* claim construction order, where only the ornamental designs of the struts were to be compared as part of the design infringement analysis:

> [E]ven assuming the struts are functional, [fn omitted], they can be designed in a U-shape, a trapezoidal shape, they can splay out from the pool or stand vertically, they can touch the bulging side-wall of the pool or not, and so forth.

(A409)  As discussed below, a comparison of the '817 Patent pool and the Summer Escapes pool shows that the struts differ ornamentally in many, many respects.

### a.    The Ornamental Shape of the Struts is Dissimilar

First, the designs of the struts, as seen from the side views, are not the same. The '817 Patent discloses trapezoidal shaped struts that angle outwards as the eye moves up, so that the base of the strut is smaller than the top of the strut.  (A865-A869,A1120)  The struts also have sharp corners where the vertical bars meet the horizontal bars.  (A865-A869,A1120)  On the other hand, the Summer Escapes pool has rectangular or U-shaped struts, with generously rounded corners along the bottom.  Moreover, the top of the Summer Escapes pool's strut is actually hidden.

(A1120,A1221)  A close-up of the different designs is shown below, with the struts

highlighted in green.  (A1120)

*'817 Patent
pool strut*   *Summer Escapes
pool strut*

### b.    The Ornamental Angle of the Struts is Dissimilar

Second, as seen from the end and top views, the struts' angles, and their

relationship to the side walls, differ markedly.  Figure 9 of the '817 Patent, a close-

up of which is pictured below, discloses struts that are nearly parallel to the side

wall and that touch the side wall at the top and near the bottom.  (A868,A1125-

A1128)  As such, one can actually measure the struts depicted in Figure 9, which

discloses that they angle out 15 degrees on the right side and 16 degrees on the left

side.  (A1131-A1132)  The Summer Escapes pool, on the other hand, has struts

that dramatically splay out away from the side wall at 32 degrees and that only

touch the side wall at the top.  (A1126-A1128,A1131-A1132,A1219,A1223,

A1225)

21364814v1



The end view comparison below is followed by the top view comparison.

The pools are scaled to the same width for a fair comparison. (A1122-A1123,A1129-A1131)





'817 Patent, Fig. 8

Summer Escapes

While an ordinary observer would not know what the exact degree the different struts were, an ordinary observer would certainly notice that the Summer Escapes pool has struts that splay out much farther than the struts in the '817 patent pool. (A1131-A1132) Notably, patentee Carreau testified that having the legs splay out from the pool results in a different visual appearance than the '817 Patent pool. (A860-A863)

As a result of the difference just in the struts alone, the '817 Patent pool's overall profile is plainly dissimilar from that of the Summer Escapes pool, and an ordinary observer would not be deceived into purchasing one believing it to be the other. *Egyptian Goddess*, 543 F.3d at 683.

## 2.    While the Existence of Straps is Functional, the Ornamental Aspects of the Straps are Dissimilar

The straps connecting the struts to the pool also are functional. Without the straps, the struts would not hold their position and the pool would be unstable. (A1266,A1282) Therefore, any similarity caused merely because both the '817

Patent pool and the Summer Escapes pool have straps, must be factored out as part of the infringement analysis.

There are, however, ornamental aspects to these functional straps that may be considered. The top view shown earlier, as well as the perspective view shown below, demonstrates the different ornamental straps designs connected to the struts. The straps are barely visible on the '817 Patent as they primarily project under the pool. (A865-A869) In addition, no open space is visible on the '817 Patent pool between the strap and the pool or the strut. (A865-A869) By contrast, the Summer Escapes pool's straps are highly visible, as there is significant open space between the strap and the pool or the strut. (A1123,A1135-A1136,A1219,A1225) In addition, the exposed portion of the strap is significantly longer than it is wider. (A1123,A1135-A1136,A1219,A1225)

*'817 Patent, Fig. 6*   *Summer Escapes pool*

Notably, patentee Carreau testified that the width of the strap changes the ornamental appearance of the pool compared to a narrower strap. (A861-A862)

Accordingly, the dissimilar view of the straps contributes to an overall dissimilar appearance between the '817 Patent pool and the Summer Escapes pool.

21364814v1

### 3.    The Existence of the Outward Bulging End Walls is Functional, but Their Ornamental Shapes are Dissimilar

The '817 Patent pool's end walls also have functional elements.  Because there are no struts, the end walls must bulge, or angle outward, in their lower half in order to withstand the water pressure.  Otherwise, the pool would tip over from the weight and the water pressure.  (A1280-A1281)  This again was confirmed by Carreau's testimony.  (A842-A845)

Therefore, any similarity caused by both the Summer Escapes pool and the '817 Patent pool merely having a bulge on the rounded or curved end walls, must be factored out of any infringement analysis.

While an outward angle in the lower half is required for functional purposes, the shape of that end wall may differ ornamentally and therefore should be considered as part of the infringement analysis.  Overall, the designer of a self-rising pool has only a limited number of features to distinguish the ornamental design with others, as the bottom needs to be flat, there needs to be a top collar, and the walls need to angle outward for stability.  (A1117-A1119)  Still, the shape of the profile can be adjusted to change the ornamental appearance.  (A1117-A1119)  By way of analogy, when comparing the profile of two people, one would notice that they both have eyebrows and noses.  But while every person's face has an eyebrow and a nose, it is the variations in the profile, when compared overall, that distinguishes one person from another.

- 34 -

Here, as viewed from the side, the slope and design of the end walls are plainly dissimilar. (A1117-A1119,A1128-A1129) The '817 Patent discloses a top ring and bottom portion that are the same, overall size from the top and bottom views, resulting in a profile looking like an eyebrow with a bulbous nose. (A865-A869,A1117-A1119,A1128-A1129) On the other hand, the Summer Escapes pool has a smaller top ring with a larger base that extends noticeably past the top ring, resulting in the Summer Escapes pool having a profile of an eyebrow and a straight nose sticking out further than the brow. (A1117-A1119,A1221,A1128-A1129)

---

**End Walls Viewed From the Side**




*Vertical lines in red show the relationship of the base to the top ring*




*Red lines show the differently shaped end walls of the '817 Patent pool and Summer Escapes pool*

*Bulbous nose of the '817 Patent*     *Straight nose of the Summer Escapes*

21364814v1

Accordingly, the dissimilar shapes of the end walls contribute to an overall sufficiently distinct appearance between the '817 Patent pool and the Summer Escapes pool.

### 4.    The Existence of the Top Collar is Functional, but the Ornamental Aspects of the Top Collars are Dissimilar

As noted by patentee Carreau, the existence of the top collar is functional, because it is needed for the pool to rise as it is filled with water, and for the water to remain in the pool.  (A856-A859)

Because the top collar is made of a soft material and inflated with air, as Carreau readily admitted, its potential designs are limited.  (A395-A396,A856-A859,A1280)  It cannot have sharp edges and must have rounded corners.  The only way to obtain a square shape, or with sharp corners, is to make the top collar with another material, like foam.  But doing so changes the functionality of the top collar, as it would no longer be collapsible for easy storage.

One of the only ornamental aspects of the top collar is its size relative to the body of the pool.  Here, the '817 Patent pool's top collar is larger than the Summer Escapes pool's top collar, relative to their bodies.  (A865-A869,A1113,A1219, A1221)  Moreover, the '817 Patent pool's top collar extends out as far as the base of the pool, whereas the Summer Escapes pool's top collar does not, as shown below.  (A865-A869,A1117-A1119,A1221)

 



*Figure 7 of the '817 Patent*          *Summer Escapes Pool*

Accordingly, the top collars' dissimilar sizes and designs contribute to an overall dissimilar appearance between the '817 Patent pool and the Summer Escapes pool.

### 5.    The Ornamental Designs of the Side Walls are Dissimilar

Unlike the end walls, the side walls of the '817 Patent pool do not need to angle outward for stability in their lower half, because the side walls have struts. Therefore, the shape and design of the side walls should be considered as part of the design infringement analysis.

The comparison below shows that the shape and design of the side walls of the Summer Escapes pool and the '817 Patent pool are also sufficiently distinct. The '817 Patent pool's side walls have the exact same bulbous nose shape as its end walls. (A865-A869,A1128-A1129)  But the Summer Escapes pool's side walls are not that of a bulbous nose, or a nose at all.  Instead, the Summer Escapes pool's side walls have a curved bow shape. (A1128-A1129,A1223)

- 37 -

As a result, the side walls of the '817 Patent pool and Summer Escapes pool bulge at different locations.  (A865-A869,A1128-A1129,A1221,A1223)  Moreover, Figure 9 of the '817 Patent discloses concave upper side walls, whereas the Summer Escapes pool discloses convex upper side walls–the opposite of concave.  (A868,A1126,A1223)  The upper side walls of both pools highlighted in red are shown below.  (A1126)



*Figure 9 of the '817 Patent*          *Summer Escapes side wall*

Accordingly, the side walls' dissimilar shapes contribute to an overall dissimilar appearance between the '817 Patent pool and the Summer Escapes pool.

      **6.**      **The Ornamental Shape at the Edges of the End Walls in the Summer Escapes Pool are Opposite Those of the '817 Patent Pool**

The design of the end walls' edges where they touch the ground are also plainly dissimilar as between the '817 Patent pool and the Summer Escapes pool.  As shown below, the Summer Escapes pool has a generally smooth and round lower edge on the curved ends.  (A1115-A1116,A1219)  The '817 Patent pool, on the other hand, has panels that bow inward or uplift between the seams.  (A865-

A869,A1114-A1116,A1120-A1121,A1136-A1137)   In the illustrations, the lower

front edge has been compared with a consistent circular shape in red, and the

seams are circled along the lower front edge in green.  (A1114-A1116)  Close-up

illustrations are also provided.



'817 Patent

Summer Escapes pool

*Red circular line vs. blue hatching lines show that panel bows up*

*Most outwardly protruding point*

*Red circular line shows pool has generally circular shape*

*Close up of '817 Patent*

*Close up of Summer Escapes pool*

While the '817 Patent pool's inwardly bowing end panels are obvious from

the drawings above, the uplifting on those panels is also disclosed through the use

of hatched lines.  Hatched lines are the dashed lines that describe the contour of the

surface in a design patent.  (A1114)  Different types of hatched lines depict

different designs.  In the close-up illustrations, the blue highlighted hatched lines

of Figure 6 are similar to a frown.  They reflect that the end panel bows inwards

between the seams.  (A867,A1114-A1116,A1120-A1121)  They also reflect that

the end wall's most outwardly protruding point is not at the bottom edge, but about a third of the way up from the bottom.  (A865-A869)  The hatched lines also show that the '817 Patent pool's side panels are different than those of the Summer Escapes pool.  The '817 Patent pool has uplifted end panels, as demonstrated by the red frown-shaped hatched lines in Figure 7 below.  The '817 Patent's straight side panels do not have any uplifted portion, as indicated with the straight green hatching in Figure 7.  (A867,A1120-A1122)



Conversely, the Summer Escapes pool's side view shows that the side wall panel is uplifted, but that the end panels are not–both of which are opposite from the '817 Patent pool design.  (A1120-A1122,A1221)  Close-up photographs of the Summer Escapes pool with red arrows to indicate the portion along the side wall that is uplifted are provided.  (A1120-A1122,A1219,A1221,A1136-A1138)



*Close-up of side view of Summer Escapes Pool with red arrows to indicate uplifted section*



*Perspective view of Summer Escapes Pool with straight line showing uplifted side*

- 40 -

In the district court, Sofpool found this ornamental difference so important that it repeatedly modified the drawings of its '817 Patent pool to look like the Summer Escapes pool.  (A1387-A1389,A1403-A1405,A1421-A1423,)

In sum, the different shapes of the walls contribute to an overall dissimilar ornamental appearance between the '817 Patent pool and the Summer Escapes pool.

### 7.    There are Numerous Other Ornamental Dissimilarities Between the Designs of the '817 Patent Pool and the Summer Escapes Pool

There are numerous other ornamental design distinctions, but space constraints do not permit a detailed discussion.  In general, they relate to further differences regarding the straps (A865-A869,A1133-1134), the number, size and design of the panels (A867,A1113,A1119), and the patterns of the seams (A1119,A1124-A1125)

### E.    The General Configuration of the '817 Patent is Functional

As a result, the '817 Patent's general configuration is functional.  An elongated self-rising pool cannot function without the use of struts on the straight sidewalls of the pool, straps connecting the struts, outwardly bulging end walls, a top collar, and seams to hold the various pieces together.  As patentee Carreau

testified, the '817 Patent pool does not "work" any other way. (A842-A845,A855-A859) For example, struts could be put around the entire pool, like the '839 Rho Patent (discussed below), which would alleviate the need for outwardly bulging end walls or a top collar filled with air. But doing so would change the functionality of the pool, as it would no longer be self-rising. The storage of such a pool would be much more difficult, so a regular soft sided pool is not a substitute for a self-rising pool. In addition, the cost of such a pool would be increased because of the additional struts. (A842)

Consequently, there is no infringement simply because the Summer Escapes pool has the same general functional configuration as the '817 Patent pool. This would be analogous to finding that the designs of two cars were deceptively the same simply because both have doors, windows, tires, lights, and windshields. But this Court repeatedly has rejected such an analysis, and has ruled that any infringement analysis must be based on the overall ornamental design aspects. *See Richardson*, 597 F.3d at 1293-94 (finding that general configuration and existence of several elements is functional, and that ornamental aspects should be considered only); *OddzOn Prods. Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1406 (Fed. Cir. 1997) (finding design patent's general configuration of football-shaped ball with a tail and fin structure functional and therefore not infringed merely because

accused product has same structure).  To hold otherwise would turn a design patent into a utility patent.

As noted, this approach is also consistent with the district court's *Markman* ruling:

> Whatever functional role may be played by any element or feature of the pool depicted in the drawings is not a part of the claim, and should therefore be disregarded; but the design of those same elements or features is a part of the claim.

(A410)

On appeal, Sofpool argues, for the very first time, that the '817 Patent pool only "functions as a vessel to hold water."  (Br. 28)  This argument fails both substantively and procedurally.  The argument fails substantively, because even as a vessel that holds water, its general configuration is still functional for the reasons discussed above.

Procedurally, Sofpool's argument must be rejected because it is being raised for the first time on appeal.  This Court held that: "It is the general rule…that a federal appellate court does not consider an issue not passed upon below." *Golden Bridge Tech., Inc. v. Nokia, Inc.*, 527 F.3d 1318, 1322 (Fed. Cir. 2008) (quoting *Singleton v. Wulff*, 428 U.S. 106, 110, (1976)).  Moreover, "precedent generally counsels against entertaining arguments not presented to the district court." *Id.*

Not only did Sofpool fail to make the "vessel" argument in the district court, it failed to make *any* argument, or provide *any* evidence, to contradict the

21364814v1

testimony given by patentee Carreau, or the testimony given by the Retailers'
industrial design expert–Professor Visser.  Indeed, in its opposition to the
Retailers' summary judgment motion, Sofpool failed to perform *any* analysis of
functionality, and only used the word "functional" on one occasion, in an
unsuccessful attempt to argue that this Court's decision in *OddzOn Products*
should be disregarded as bad law.  (A1289-A1315,A1464-A1465)

Here, while Sofpool acknowledges the "factoring out" requirement
discussed in *Richardson* (Br. 28,29,41), Sofpool never applies that test to this case.
Instead, Sofpool purports to perform a "substantial similarity" comparison without
ever performing an analysis of functionality, which must be done before
comparing the ornamental designs for substantial similarity.  Then, without any
meaningful analysis, Sofpool summarily concludes that the '817 Patent pool and
Summer Escapes pool are substantially similar, based on the pools' general
configuration and the fact that both pools share functional elements such as
"struts," "angles," "bulges," and "smooth surfaces."  (Br. 34-37)  But the inherent
functionality of these elements was not, and could not, be disputed by Sofpool in
the district court.  The proper analysis therefore, which Sofpool utterly failed to do,
is to compare the *ornamental* design encompassed within these functional
elements, to determine whether the overall design of the Summer Escapes pool is
deceptively similar.  As demonstrated above, when the overall ornamental aspects

of the '817 Patent and Summer Escapes pool are compared, their ornamental designs are plainly dissimilar.

In addition, the headings presented at pages 34-37 are another improper attempt by Sofpool to rewrite the district court's claim construction order (from which Sofpool did not appeal), into one that was expressly rejected by the district court. Sofpool originally argued for a claim construction order of the same overbroad elements, such as "smooth sides," an oval tubular top with a "round cross section," and side struts "cast at an angle" and "retained at the bottoms by straps which extend horizontally a distance…." (A73)  In its *Markman* order, the district court rejected all of these descriptions as "too broad." (A407) Therefore, Sofpool's arguments in its opening brief run afoul of the district court's *Markman* order. But because Sofpool did not appeal that order, such arguments must be rejected.[4]

But even if Sofpool had appealed the *Markman* order, the district court correctly ruled that Sofpool's proposed construction was too broad for several reasons.

---

[4] Sofpool contends that the Retailers argued for a detailed written claim construction order in the *Markman* phase. (Br. 31) This is incorrect. The Retailers argued that the district court should _not_ issue a detailed written claim construction, and also, that Sofpool had asked the district court to issue a written claim construction that did not accurately describe the '817 Patent. (A94-96) The Retailers therefore provided the district court an alternative construction to Sofpool's, but *only* in the event the district court wished to issue a detailed written claim construction order, which it ultimately did not do. (A94-A95)

First, the term "smooth sides" is vague. If it refers to a smooth surface, such a construction is improper because the smooth surface is merely a byproduct of the material used. If smooth just means smooth, it could hardly be considered novel or patentable.

Second, Sofpool seeks to take original credit for designing walls with "angles" and "bulges." Again, the term "angles" is vague. As purported support, Sofpool points to the curved and concave upper wall sections of the '817 Patent pool, while also pointing to Summer Escapes pool's straight end walls that are without curves and to the side walls that are convex. (Br. 34) Therefore, Sofpool seeks to have its design patent claim any pool with walls that are straight, curved, concave, and convex. Put another way, Sofpool proposes to claim any wall that is not at a 90 degree angle and which is angled outward or has a bulge. But, as discussed herein, the mere existence of the outward angle or bulge is functional, and soft-sided pools cannot form 90 degree angled walls. (A842-A845,A1118,A1280-A1281)

Third, Sofpool seeks to claim an inflatable top collar, modified by the vague words "prominent" and "oval-shaped." (Br. 35) It is vague as to what size is sufficient to be considered prominent. Ironically, because the Summer Escapes pool's top collar is much smaller relative to its body than the '817 Patent pool's top collar, Sofpool's purported claim construction actually highlights the differences

between the two designs.  (A865-A869,A1117-A1118,A1219,A1221)  In addition, as noted earlier, the top collar must exist for the '817 Patent pool "to work," and it must follow the shape of the pool's opening and attach to its sides to serve its function of raising the walls and holding water in the pool.

Fourth, Sofpool seeks to claim "U-shaped" struts cast at an "angle" that include straps that extend horizontally a "distance" from the pool.  (Br. 36)  This is improper, as functionality requires the struts to be at an angle, consist of both vertical and horizontal bars to provide longitudinal and latitudinal support, and be connected by straps.  Sofpool's proposed claim construction also is erroneous, because patentee Carreau chose to design struts that are not "U-shaped," but are instead trapezoidal with sharp corners.

Moreover, any claim for struts that are cast at an unspecified "angle" is impermissibly overbroad, as it would cover angles at 1 degree and 89 degrees alike, even though the visual appearance of each is vastly different, as Carreau conceded.  Further, the mere reference to an "angle" is unhelpful because the strut must be angled for support.  Just as the walls must bulge out for support, it is axiomatic that the struts must angle downward and outward to function, or they would not provide the necessary support.  It is the angle downward, and the connection with the strap, that helps to provide reinforcement to the wall by distributing pressure.

Lastly, Sofpool seeks to claim straps that extend a "distance" horizontally from the strut to the pool. (Br. 36) Functionally, the straps must be horizontal and connect to the strut's vertical bar on the bottom. (A1282) The term "distance," again, is vague.

In sum, Sofpool is attempting to claim the '817 Patent pool's *functional* elements as *ornamental*. And it is attempting to do so in an impermissibly overly broad fashion.

### F.    The District Court was not Confused

In arguing for reversal, Sofpool is unable to point to any error in the district court's written order. Nor does Sofpool take issue with the law on which the district court relied. Instead, Sofpool's brief focuses on statements made during oral argument and urges that the district court must have been "confused" in ruling the way it did. But Sofpool's multitudinous references to the district court's comments made during oral argument must be ignored. This Court has made it explicit that when the lower court has issued a written opinion that is clear as to the legal analysis the court employed, this Court relies solely on that written opinion, and any previous statements the district court made during a hearing are of no moment. *See Galen Med. Assocs. v. United States*, 369 F.3d 1324, 1331 (Fed. Cir.

2004) ("We rely on the court's written opinion rather than its oral statement during a hearing….")

The Ninth Circuit (where the district court sits) is in accord, and has explained "[w]e review the written opinion and not the oral statements because 'oral responses from the bench may fail to convey the judge's ultimate evaluation [and] subsequent consideration may cause the district judge to modify his or her views.'" *United States v. Robinson*, 20 F.3d 1030, 1033 (9th Cir. 1994) (quoting *Ellison v. Shell Oil Co.*, 882 F.2d 349, 352 (9th Cir. 1989)); *United States v. Richardson*, 638 F.2d 1189, 1189 (9th Cir. 1980) ("The district judge did make an oral statement…but the written judgment does not contain any such reference. It is the written order that is before us.")

Here, Sofpool's brief makes numerous references to comments that the district court made during oral argument. For example, on at least seven occasions, beginning with the first paragraph following the Jurisdictional Statement on page one, Sofpool argues that the district court found this case to be different from *Competitive Edge, Inc.* (Br. 1,4,16,21,24,39,42) In truth, the district court never discussed nor cited to *Competitive Edge* in its written decision. (A2-A14)

In fact, while Sofpool cites to the district court's written order 16 times, it cites to the oral argument 15 times, and often intermingles the two into a single

sentence, without a citation differentiating what was said in the written order from what was said at the hearing. Elsewhere, Sofpool blatantly attempts to suggest that what was said during oral argument was in fact contained in the court's written order (filed four and one-half months after oral argument). For example, at page 15 under heading (c), Sofpool quotes from the district court's order twice, and then, without a citation, states:

> So that the District Court's *opinion* on the similarity of the Accused Design and Patented Design could not be more clear, the District Court differentiated Sofpool's case from the case of *Competitive Edge, Inc. v. Staples, Inc.*, where the accused and patented designs were found to lack similarity.

(Br. 16 (emphasis added)). But, as noted earlier, the district court never cited to *Competitive Edge* in its opinion.

Unquestionably, the district court's comments at oral argument were simply part of the colloquy that occurs between a judge and the lawyers, and are of no relevance on appeal in light of the district court's thirteen-page written order articulating its legal analysis in detail. Furthermore, because a court may be playing devil's advocate during oral argument, or probing to find the logical limits of a party's arguments, a court's questions or statements may be misinterpreted or taken out of context. Lastly, due to the time period between oral argument and the written order, the district court had ample time to consider all relevant issues raised during oral argument, and take a thorough look at the law and evidence.

- 50 -

### G.  The Hallmark of Sofpool's Opening Brief is its Reliance on Irrelevant Issues

#### 1.  Professor Visser's Prior Testimony Regarding a Different Pool Given in a Different Lawsuit is Irrelevant

The Retailers' briefs filed in the district court were accompanied by the testimony of their expert witness, Professor Visser.  Sofpool does not challenge Professor Visser's expertise in industrial design.  Instead, Sofpool expends significant energy discussing a phase uttered by Professor Visser on the witness stand years earlier in a different lawsuit, involving a different pool, different parties, and at a time when there was a different infringement test.  (Br. 13-15,39-40)  That testimony is completely irrelevant for several reasons.

First, in finding non-infringement, the district court did not cite to Professor Visser's opinions given in this case.  (A2-A14)

Second, the referenced testimony involved a different pool sold by Intex, and not the Summer Escapes pool.  (A1405,A1423)  Naturally, the Summer Escapes pool was not at issue in the *Intex* case.  Professor Visser did not see or analyze the Summer Escapes pool until almost four years after that testimony.  (A1423)

Third, Sofpool's argument is based on a factual fallacy that the Summer Escapes pool and the Intex pool are "nearly identical," "substantially similar," or "very similar."  (Br. 13,40)  But the two pools are not any of these things.  (A1423-

A1425)  Among other differences, the Summer Escapes pool is proportionally taller than the Intex pool, just as it is to the '817 Patent pool, but to a lesser degree with respect to the Intex pool.  A comparison at the same height shows the Intex pool is longer than the Summer Escapes pool, and a comparison at the same width shows that the Summer Escapes pool is taller.  These different proportions are significant, because the Intex pool's proportions are somewhat closer to the '817 Patent pool, making it look more similar to the '817 Patent pool than the Summer Escapes pool does.  (A1423-A1424)

Fourth, Professor Visser's statement in the *Intex* case was simply that the pictures shown to him "*could*" confuse an ordinary observer.  (A1369)   However, the possibility of "confusion" is *not* the test for infringement.  Deception is the test.  *Egyptian Goddess*, 543 F.3d at 681.  Notably, the drawing of the '817 Patent pool that Professor Visser viewed during his *Intex* testimony was a side view of the '817 Patent pool, whereas the Intex pool pictures were hybrid perspective views.  (A1426-A1427)  Sofpool's counsel never asked him to compare an image of the Intex oval pool and the '817 Patent pool using the same views.  (A1427)

Moreover, the question posed to Professor Visser is completely irrelevant.  Since the question, and corresponding response, were not limited to or directed solely at the ornamental design of the Intex pool or the '817 Patent pool, Professor Visser's response necessarily included any similarities or confusion caused by

- 52 -

functional features (A1425-A1426), which are irrelevant in determining design patent infringement. *OddzOn Prods*, 122 F.3d at 1405 ("If…a design contains both functional and ornamental features, the patentee must show that the perceived similarity is based on the ornamental features of the design. The patentee must establish that an ordinary person would be deceived by reason of the common features in the claimed and accused designs which are ornamental.") (internal quotations omitted). Therefore, Professor Visser testified that based on the images shown to him on the witness stand, the Intex pool and '817 Patent pool "could" be confused when considering functional and ornamental elements together. (A1426)

Tellingly, Professor Visser was never asked whether the ornamental designs of the Intex pool and the '817 Patent pool were deceptively similar. Nor was he asked to compare the district court's claim construction against the Intex pool for overall ornamental appearance. (A1426) In fact, ornamentality is not mentioned once in the brief line of questioning directed to Professor Visser.

Fifth, as Sofpool recognizes, the trial of the *Intex* case occurred before this Court, sitting *en banc*, changed the test for determining design patent infringement. *Egyptian Goddess*, 543 F.3d at 681. As a result, Professor Visser did not prepare a report for the '817 Patent under the ordinary observer test. Instead, Professor Visser only was retained to opine on points of novelty in the '817 Patent, and whether the Intex pool encompassed those points of novelty, based upon the

district court's pre-*Egyptian Goddess* claim construction order. (A1426) (To prove infringement at the time, the now-rejected "point of novelty" test under *Litton Systems, Inc. v. Whirlpool Corp.*, 728 F.2d 1423, 1444 (Fed. Cir. 1984) required the patentee to show that the accused design incorporated points of novelty not found in the prior art.) But even then, Professor Visser's opinions regarding the points of novelty were based only on a five-strut version of the Intex pool, and not a two-strut version that he was shown during his testimony. (A1426)[5]

Accordingly, any testimony regarding the Intex pool should be given no weight.

### 2. Sofpool's Commercial Pools are Irrelevant and not Part of the Record

At pages 17-20, Sofpool improperly references the commercial pools that it sells that purportedly are embodiments of the '817 Patent design (again, there is no analysis or consideration for factoring out functional aspects). Sofpool's commercial pools are procedurally and substantively irrelevant.

---

[5] In the district court, and again in its opening brief, Sofpool falsely accuses the Retailers and Professor Visser of employing the "point of novelty" analysis in this case. (A1294; Br. 30-32) Sofpool's argument is clearly incorrect. Indeed, the Retailers contend that there is nothing novel about the claimed design. Moreover, they do not incorporate any form of a checklist to show that the accused design does not incorporate certain points of novelty.

Procedurally, Sofpool's commercial pools must be ignored because they are not part of the record considered by the district court. On January 10, 2013, after oral argument concluded, the district court issued an order stating that the "matter stands SUBMITTED. Court order to follow." (A31) Nonetheless, by letter dated January 11, 2013 (and filed January 16, 2013), Sofpool's counsel submitted a letter to the district court, attaching what purported to be pictures of Sofpool's commercial pools. No foundation was provided as to how Sofpool's counsel could state what the pictures purported to be. Nor was there any statement under penalty of perjury attesting to these facts. (A1592-A1610) This unsolicited after-the-fact submission was never requested by the district court, and leave to file was never granted. Therefore, the pictures are not part of the submitted record and should not be considered.

But even if this Court were to consider the arguments regarding the after-the-fact pictures (Br. 18-20), Sofpool's commercial products are irrelevant because to determine infringement, the trier of fact must compare the accused product to the figures in the design patent itself, rather than to the commercial embodiment of the patented design. *See, e.g., Sun Hill Indus., Inc. v. Easter Unlimited, Inc.*, 48 F.3d 1193, 1196 (Fed. Cir. 1995) ("[t]he test for infringement is not whether the accused product is substantially similar to the patentee's commercial embodiment of the claimed design"); *Payless Shoesource, Inc. v. Reebok Int'l, Ltd.*, 998 F.2d

985, 990 (Fed. Cir. 1993) ("[p]roper application of the *Gorham* test requires that an accused design be compared to the claimed design, not to a commercial embodiment").

To the extent district courts have allowed such comparisons, they are only allowed "[w]hen no significant distinction in design has been shown between the patent drawing and its physical embodiment." *Lee*, 838 F.2d at 1189. Here, there *are* significant distinctions between the '817 Patent and the "Congo" and "Sofpool" oval pools that Sofpool's lawyers contend are its commercial embodiment.

Comparisons of the pictures of the three-strut Congo pool and the '817 Patent pool are provided below. The first is a perspective view comparison, followed by a side view comparison at the same height, and an end view at the same width. (A1623-A1626,A1632,A1634,A1636)



*Congo Pool Is Proportionally Taller Than '817 Patent*

*Congo Pool Struts Splay Out Significantly vs. '817 Patent Pool Struts Do Not*

*Outwardly Rounded End Walls vs. Uplifted End Walls*

Fig. 6



*   *   *



Obviously, it is clear that the Congo pool does not come close to being the commercial embodiment of the '817 Patent pool, and it should be given no weight.

### 3.    Jury Instructions From a Different Case are Irrelevant

Sofpool also cites to jury instructions from the *Apple v. Samsung* case and argues that those instructions support Sofpool's position.  (Br. 3,27-28)   These jury instructions also should be given no weight for both procedural and substantive reasons.

Procedurally, these jury instructions are not part of the summary judgment record, because they also were included in Sofpool's unsolicited after-the-fact package sent to the district court.  (A1592,A1611-A1621)  Moreover, they obviously are for a different case involving different parties, different patents, and completely different class of products.

Substantively, jury instruction No. 47 simply states that ordinarily, the trier of fact should not compare commercial embodiments to the accused product, but that the trier of fact *may* make such a comparison if the commercial product is substantially the same as the patent drawing.  These instructions are irrelevant in light of discussion above, because the Congo and Sofpool pools vary significantly from the '817 Patent drawings, and are *not* "substantially the same."

In addition, jury instruction No. 46 includes a guideline that the trier of fact should not consider the "size" of the accused product if the patent does not specify the size of the design. This instruction, however, is irrelevant to this case, because the Retailers have never argued that the '817 Patent pool discloses a particular size. Instead, at issue in this action are *proportions*, which the '817 Patent *does* disclose. The concept of proportions is very different from size, because a product can be made at different sizes and maintain its design, so long as the proportions remain the same.

## H.    The District Court was not Required to Compare the Prior Art

The district court did not consider the prior art, because it was unnecessary to do so. In noting that in a case alleging design patent infringement, it is often helpful to refer to the prior art, the district court observed, however, that "because the accused design is not within the scope of the claimed design, there is no need to engage in a discussion or analysis of the prior art." (A13) The district court's ruling was in line with the law that the prior art need not be considered where two designs are sufficiently distinct. *Egyptian Goddess*, 543 F.3d at 678.

In arguing that the district court failed to consider the prior art, what Sofpool is really arguing is that if the ordinary observer is familiar with the prior art, the bar for finding similarity or sameness is lowered, and that the prior art can turn a non-

infringing design into an infringing design. But familiarity with, and differentiation from, the prior art is an *additional* hurdle to finding infringement, and does not alter or lessen the requirement that the accused and claimed design be deceptively the same. If a design does not infringe because it is plainly dissimilar, then that design will not morph into an infringing design if the prior art is considered.

Because the '817 Patent pool and the Summer Escapes pool are plainly dissimilar, the district court properly ignored the prior art.

## I.      The Prior Art Further Supports a Finding of Non-Infringement

But even if the district court had found that the ornamental designs of the '817 Patent and the Summer Escapes pool were not plainly dissimilar, and instead had considered the prior art as part of the final step in its analysis, the district court still would have concluded that the Summer Escapes pool does not infringe the '817 Patent.

When the prior art is considered, the dissimilarities between the '817 Patent pool and the Summer Escapes pool are more pronounced in the eyes of the hypothetical ordinary observer. "Where there are many examples of similar prior art designs…differences between the claimed and accused designs that might not be noticeable in the abstract can become significant to the hypothetical ordinary

observer who is conversant with the prior art." *Egyptian Goddess*, 543 F.3d at 678.

In *Egyptian Goddess*, this Court relied heavily on *Smith v. Whitman Saddle Co.*, 148 U.S. 674 (1893), which held that a hypothetical ordinary observer would have distinguished the accused and claimed saddle designs based solely on the angle of the drop at the rear of the pommel (the part below the horn), because a combination of prior art designs yielded a design having all but that feature. *See also Arminak & Assocs. v. Saint-Gobain Calmar, Inc.*, 501 F.3d 1314, 1324-25 (Fed. Cir. 2007) (finding ordinary observer would not be deceived where only minor differences existed); *Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co.*, 162 F.3d 1113, 1115 (Fed. Cir. 1995) (holding no infringement even though apparent similarities in overall design appearance because ordinary observer would notice minor differences).

Sofpool purports to perform a "three-way comparison" of the '817 Patent pool, the Summer Escapes pool, and the prior art. (Br. 48-69)  But Sofpool's comparisons are indisputably factually incorrect, focus primarily on functional aspects, and are substantively devoid of any analysis.  Besides, whether the prior art is closer to the '817 Patent pool or the Summer Escapes pool is not dispositive to a finding of infringement, as the ordinary observer test is the sole basis for determining infringement.

The prior art for each of the ornamental features of the '817 Patent is discussed below.

### 1.    Prior Art Struts

Sofpool argues that the '817 Patent pool and Summer Escapes pool have two side struts that are "generally U-shaped" and "held by side straps at bottom," while the Rho '839 Patent has "14 Struts surround pool." (Br. 51)  Again, Sofpool's position ignores functionality and the undisputed facts.   As shown above, the '817 Patent discloses *trapezoidal* shaped struts with sharp corners, whereas the Summer Escapes pool has rectangular or U-shaped struts with generously rounded corners. (A865-A869,A1120,A1221)

And even though Sofpool references the Rho '839 Patent, Sofpool omits any discussion of the Rho '839 Patent's struts' shape, which teaches the same U-shaped struts found on the Summer Escapes pool. (A1030,A1192-A1193,A1221)  In fact, Sofpool never discusses nor analyzes *any* of the struts found in the prior art, including the trapezoidal struts that are identical to those of the '817 Patent pool that were taught by the Mussa '145 Patent. (A1017)  The struts from these designs are pictured below. (A867,A1017,A1030,A1038, A1047,A1221,A1393)  Significantly, while Sofpool later reproduces a top view of

the '145 Patent (Br. 68), Sofpool fails to provide the actual design of the Mussa

'145 Patent's strut–which is the only design feature claimed.  (A1017)



'145 Patent strut    '817 Patent pool strut    *Summer Escapes pool strut*    '839 Patent strut    '693 Patent, Fig. 3    '616 Patent, Fig. 1

    Sofpool also attempts to differentiate the Rho '839 Patent on the basis that it

has struts on the curved ends of the pool.  This location of these struts, however, is

driven by functional reasons.  The Rho '839 Patent pool, unlike the '817 Patent

pool and the Summer Escapes pool, is not a self-rising pool and does not have an

inflated top collar.  (A1280-A1281)  Therefore, the struts functionally are required

on the curved ends to provide support for the pool.  (A1281)

    Sofpool also fails to conduct any analysis of the ornamental angles of the

struts.  The visual appearance of the struts of the Rho '839 Patent is similar to

those of the Summer Escapes pool.  A comparison of the struts is shown below

(the comparison is not to scale due to space constraints).  (A868,A1030,A1223,

A1394)

    

'839 Patent    '817 Patent, Fig. 9    *Summer Escapes pool*

## 2.    Prior Art End Walls

Next, Sofpool claims that there is a similarity between the '817 Patent pool and the Summer Escapes pool, because both have "Gently sloping angle" end walls with a "Bulge." (Br. 52)  As discussed above, this description is overly-broad and was rejected by the district court in its *Markman* order.  Also, it is vague, the bulges in the lower halves of their end walls are functional, and the ornamental shapes of the end walls are dissimilar, for the reasons discussed above.

Sofpool contends that the Rho '839 Patent has "Perpendicular end walls" with "no bulge."  (Br. 52)  This contention is belied by the actual drawing from the Rho '839 Patent, which clearly shows a bulge.  The bulge, however, is less significant, because the Rho '839 Patent includes struts on its end walls that also provide support.  (A1281)



'839
Patent




*Bulbous nose of the
'817 Patent*



*Straight nose of the
Summer Escapes*

(A867,A1030,A1221,A1397)

21364814v1

Furthermore, the prior art includes end wall shapes that are either similar to, or more similar to, the '817 Patent pool than the Summer Escapes pool, or vice versa, as shown below. The crowded field shows that the prior art, including Sofpool's '546 Patent round pool and the Rho '839 Patent pool, is more similar to the '817 Patent pool than the Summer Escapes pool. The drawings further show that the Summer Escapes pool is more similar to the prior art '061 Patent pool than to the '817 Patent pool. (A867,A927,A935,A1030,A1221,A1397)



'817
Patent    '546
Patent    '839
Patent    '061 Patent,
fig. 3    '061 Patent,
fig. 4    Summer
Escapes Pool

### 3.    Prior Art Side Walls

Sofpool similarly claims that the '817 Patent pool and Summer Escapes pool are the same because they both have "Gently angled, bulging sidewalls." (Br. 53) This again is very vague, broad, and misleading. As discussed above, the gentle bowed-shaped '817 Patent pool side walls are plainly dissimilar to the bulbous shaped side walls of the Summer Escapes pool. (A1397-A1398)

As the figures show, the shape of the Summer Escapes pool's side walls are more similar to the Rho '839 Patent pool's side walls than they are to the '817

Patent pool's side walls.  A comparison of these side walls, as well as other prior art side walls, is shown below.  (A868,A927,A1017,A1030,A1223,A1397-A1398) By contrast, the '817 Patent's pool is more similar to the '546 Patent's round pool side walls, but with less of a bulge.  This is not surprising, since the '817 Patent oval pool was derived from the '546 Patent round pool, and the wall does not need to bulge as much, because of the existence of the struts on the '817 Patent pool. (A1397-A1398)



'817 Patent        '546 Patent        '145 Patent        '839 Patent        *Summer Escapes Pool*

### 4.    Prior Art Straps

Sofpool also argues that the Summer Escapes pool and the '817 Patent pool are the same, because both have struts that are "held by straps at bottom."  (Br. 51) But, as noted elsewhere, the use of straps to connect the struts to the pool obviously is *functional*, as is their placement, because without the straps, the struts would not hold their position and the pool would be unstable.  (A1283,A1395) Indeed, the word "held" states the function.

21364814v1

And as discussed above, the ornamental aspects of the '817 Patent pool and Summer Escapes pool are dissimilar as the straps are *barely visible* on the '817 Patent pool, but are highly visible on the Summer Escapes pool. Sofpool fails to discuss the ornamental appearance of the Rho '839 Patent pool's straps, which are plainly much more similar to those of the Summer Escapes pool, as contrasted to the '817 Patent pool, as shown below. (A867,A868,A1029,A1032,A1219,A1225, A1394-A1396)



*Rho '839 Patent*          *'817 Patent*          ***Summer Escapes***

### 5.    Prior Art Top Collars

Sofpool also claims that the '817 Patent pool and Summer Escapes pool are the same because they both have "oval-shaped top tube." (Br. 52) Sofpool is correct that both the '817 Patent pool and the Summer Escapes pool have oval-shaped top collars. But as discussed above, the existence of the top collar is functional, because it is needed for the pool to rise as it is filled with water, and for the water to remain in the pool. (A856-A859) The prior art discloses many soft-

sided pools with self-rising top collars, including: the '061 Patent, the '405 Patent, the Intex production pool, the Tempo pool, and the '546 Patent. (A925-A933,A935-A938,A954-A963,A1002,A1061)  Simply stated, the top collar follows the shape of the pool, so it must be oval for oval pools, and round for round pools.  There is very little differentiation between the prior art top collars, the '817 Patent pool, and the Summer Escapes pool, except their relative size and how far they extend in relation to the bottom of the pool.  Given the crowded prior art field, the dissimilarities between the Summer Escapes pool and the '817 Patent pool are significant.

Finally, Sofpool uses the word "prominent" to describe the top collars. (Br. 52-53)  The word "prominent" is vague and unhelpful, and was rejected by the district court in connection with the *Markman* claim construction order, which is not subject to this appeal. (A405,A407)

### 6.    Prior Art Oval Pools

The prior art discloses the following oval pools, beginning with a patent issued in 1934: '061 Patent, '839 Patent, '676 Patent, '651 Patent, '916 Patent, '361 Patent, '347 Patent, '278 Patent, and '512 Patent. (A935-A938,A940-A952,A965-A970,A972-A981,A983-A992,A994-A1005,A1007-A1012,A1019-A1026,A1028-A1035,A1190-A1193)

In sum, the '817 Patent does not conspicuously depart from the prior art in any way, such that an ordinary observer would be drawn to those elements. Instead, the crowded prior art field shows that: (1) the '817 Patent is identical to the prior art in many respects; (2) where the '817 Patent is not identical to the prior art, the prior art is closer to the '817 Patent than the Summer Escapes pool; and (3) the prior art makes the overall ornamental dissimilarities between the '817 Patent pool and the Summer Escapes pool more noticeable.

Therefore, even if the district court would have considered the prior art, summary judgment of non-infringement was compelled.

## CONCLUSION

For the foregoing reasons, summary judgment of non-infringement should be affirmed.

Dated:  October 10, 2013             Respectfully submitted,

                                     PAUL L. GALE
                                     SIAVASH DANIEL RASHTIAN
                                     TROUTMAN SANDERS LLP

                                     By:  /s/ Paul L. Gale
                                         Paul L. Gale

                                     *Attorneys for Defendants-Appellees*
                                     *Kmart Corporation and Big Lots*
                                     *Stores, Inc.*

21364814v1

# UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

# CERTIFICATE OF SERVICE

I certify that I served a copy on counsel of record
on _____
by:

☐ US mail
☐ Fax
☐ Hand
☒ Electronic Means
    (by email or CM/ECF)

<table>
<tr><td>Paul L. Gale</td><td>/s/ Paul L. Gale</td></tr>
<tr><td>Name of Counsel</td><td>Signature of Counsel</td></tr>
</table>

Law Firm    Troutman Sanders LLP

Address    5 Park Plaza, Suite 1400

City, State, ZIP    Irvine, CA 92614

Telephone Number    949-622-2700

FAX Number    949-622-2739

E-mail Address    paul.gale@troutmansanders.com

# <u>CERTIFICATE OF COMPLIANCE</u>

1.    This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) or FRAP 28.1(e).

☒    The brief contains 13,992 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii), or

☐    The brief uses a monospaced typeface and contains [state the number of ] lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) or FRAP 28.1(e) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

☒    The brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2007 in Times New Roman 14 pt font, or

☐    The brief has been prepared in a monospaced typeface using [state name and version of word processing program ] with [state font size and name of type style]

Dated:  October 10, 2013

/s/ Paul L. Gale
_____
Paul L. Gale

*Attorneys for Defendants-Appellees Kmart Corporation and Big Lots Stores, Inc.*

21364814v1